J. H. DODDRIDGE v. G. W. PATTERSON et al., Appellants.

Division One, July 1, 1909.

1. **ABSTRACT: Incomplete.** Where respondent has not brought up a full copy of the record, or a certificate of the clerk of the trial court showing that appellants' abstract does not contain all the evidence introduced, or any other evidence of that fact, respondent's motion to dismiss the appeal on the ground that the abstract is incomplete and does not contain all the evidence, will be overruled. Such motion does not prove itself.

2. ———: **Narrative Form.** Ordinarily it is best that the evidence be not set forth by questions and answers, but a narrative form is preferable. It is only when the questions and answers are necessary to convey to the appellate court the intention and meaning of the witness, that they should be set out *in haec verba.*

3. **SCHOOL LANDS: Sale: No Sufficient Petition.** The county court has no jurisdiction to order the sale of a full section 16 unless as many as fifteen householders reside in the township, nor unless a majority of the householders in the township petition for the sale. And where the county court's records are silent on the subject of the petition, although they show that it ordered the section to be sold, the jurisdiction of the court to order the sale is not shown by the testimony of a witness who testifies that the petition had fifteen names on it, but does not say they were householders of the township or how many householders resided in the township; and the court having no jurisdiction to make the order, the sheriff's sale was void, although the purchaser paid the sheriff for the land and received from him a certificate.

4. ———: County Court. The county court is a court of inferior jurisdiction, and in the sale of school lands it proceeds under special statutory directions, and it will not be presumed that it had jurisdiction to make the sale unless it be made to affirmatively appear that it observed those directions.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED.

*Wammack & Welborn* and *N. A. Mozley* for appellants.

(1) The county court of 1891 could not have made an order for the sale of this land until a petition of householders had been filed as required by Sec. 8161, R. S. 1899. McDonald v. Mangold, 61 Mo. App. 293; Eaton v. St. Charles County, 76 Mo. 492. (2) The county court, in making the order for the sale, was exercising special statutory jurisdiction, and not proceeding according to the course of the common law; consequently, its jurisdiction to make this order must affirmatively appear on the face of its record. State v. Metzger, 26 Mo. 65; Sutton v. Cole, 155 Mo. 213. (3) It not appearing upon the face of the record that the county court of 1891 had any jurisdiction to make the order introduced in evidence, the order was void, and not only was it not the clear legal duty of respondents to make out the abstract of sale and furnish it to the Secretary of State, but they had no legal right to do so, and if they had attempted to do so, they could have been compelled, in a proper proceeding, to desist. State ex rel. v. Higgins, 71 Mo. App. 185; State ex rel. v. Page, 107 Mo. App. 213; State ex rel. v. Fort, 107 Mo. App. 334. (4) Nor could the fact that there was nothing appearing on the face of its record to show that the county court of 1891 had jurisdiction to sell this land, be supplied by parol. The

fact must appear somewhere in the record. State v. Metzger, 26 Mo. 65; Corrigan v. Morris, 43 Mo. App. 461; State ex rel. v. Cunningham, 106 Mo. App. 58. (5) Even if it could have been shown by parol that there was a petition of householders presented to the court, and that, on that petition, the court made the order introduced in evidence, still the evidence failed entirely to show that there was any petition such as is required by Sec. 8161, R. S. 1899. Cunningham v. Railroad, 61 Mo. 36.

WOODSON, J.—The relator filed his petition in the circuit court of Stoddard county, asking for an alternative writ of mandamus against the members of the county court of that county, to compel them to make out and forward to the Secretary of State an abstract showing that the northwest quarter of the northeast quarter, the northeast quarter of the northeast quarter, and the southeast quarter of the northeast quarter of section 16, township 27, range 12, of the school land of said county, had been sold in the year 1891 to one O. C. Frisbee.

The alternative writ issued, and, upon the filing of the return of the respondents, a trial was had, and the court found the facts for the relator, and ordered a peremptory writ to issue. After taking the proper preliminary steps therefor, the respondents appealed the cause to this court.

As no question is raised as to the sufficiency of the pleadings, they will not be set forth in the statement of the case. A statement of the substance of the evidence will sufficiently indicate the issues made by the pleading and the facts found by the trial court.

The following is a substantial statement of the evidence, as it appears in respondents' statement of the case, which, after a careful reading of the abstract of the record, we find to be full and fair:

"On the trial of issues, relator introduced J. W. Buchanan, who testified that he was present and saw Mr. Barham sell the lands described in the writ to Frisbee at the time and place set out in said writ, saw Frisbee pay Barham the $150, and saw Barham give Frisbee a certificate of purchase or receipt for the money, and upon being shown the certified copy, afterwards introduced in evidence, stated that, in. his opinion, it was an exact copy of the one given by Barham to Frisbee.

"Relator then introduced the deputy county clerk, who identified the county court records, later introduced, and who further testified that he had made a careful search of the records, papers and files in the county clerk's office and that the entry in the minute book and record, afterwards introduced, constituted all the reference to the said sale of these lands; that he made diligent search and could not find a petition of householders asking for a sale of said lands; that he could not find any report filed or made by the sheriff of any such sale and that the records did not show that any money was paid into the treasury on account of such a sale.

"Relator next offered an order entered in the minute book and also in the record of said court, of date November 17, 1890. Said order is the same in both the minute book and record, and is as follows:

" 'In the county court of Stoddard county, Missouri, Monday, November 17, 1890.

" 'It is ordered by the court that section number sixteen in township number twenty-seven, range twelve east, be sold at not less than one dollar and a quarter per acre, at the March term, 1891, of circuit court. Terms of sale to be one-half cash and the balance in twelve months.'

"Relator next introduced Mr. Munger, one of his attorneys, who testified that he had been in possession

of the certificate of purchase given by the sheriff to Frisbee, and also a copy of the Bloomfield Vindicator, showing the notice of said sale, and that the same were taken from him without his consent or knowledge, and that he did not know where they were; that the certified copy afterward introduced was an exact copy of said certificate of purchase, and that said sheriff's sale was regular and was regularly published, as appeared from said files of said paper.

"Relator then offered what has heretofore been referred to as the certified copy of the certificate of purchase given by the sheriff to Frisbee, which is as follows (formal parts omitted):

" 'This is to certify that I, sheriff of said county, have this day received from O. C. Frisbee one hundred and fifty dollars, being payment in full for the following described real estate, to-wit: The N. ½ N. E. ¼ and the S. E. ¼, N. E. ¼, section No. 16, township No. 27, range No. 12 East, purchased by O. C. Frisbee at an order of sale of school land, held by me on the 6th day of March, 1891.'

"Relator then introduced W. F. Ford, the prosecuting attorney of the county at the time of the making of said order and sale, and also Isaac Magee, who was one of the county judges at that time. Both these witnesses testified that they had no recollection of any petition of householders having been filed, asking for the sale of said lands, and had no recollection whatever of the matter.

"The only evidence upon the issue of whether there was any petition of householders, asking for said sale of said land, is found in the deposition of O. C. Frisbee, and all that he stated upon this issue is contained in the following questions and answers:

" 'Q. State who assisted you in getting up the petition to the county court, asking for the sale of these lands? A. I could not say. Q. State, if you

know, if there were fifteen names on this petition?
A. There certainly was.'

"The witness further testified that he paid the
purchase price for the land to the sheriff, that he
received from the sheriff a certificate of purchase;
that he turned this certificate of purchase over to Mr.
Doddridge and that he afterwards sold and deeded the
land to relator.

"On his own behalf, relator testified that he bought
the land from Edward L. Hall in 1901, and has paid
all the taxes on the land to the time of trial, includ-
ing a lot of back taxes; that he had had the original
certificate of purchase given by the sheriff, but had
turned it over to Mr. Munger, who lost it, and that
the certified copy introduced was an exact copy.

"Relator also introduced a warranty deed from
O. C. Frisbee to Edward L. Hall of date January 30,
1894, conveying the lands in question, and a warranty
deed from Edward L. Hall to relator of date March
28, 1901, and conveying same lands."

This was all of relator's evidence. Respondents
introduced no evidence, but offered a demurrer to the
relator's evidence, and, this being overruled, the court
entered judgment that the alternative writ be made
peremptory, and respondents appealed the case to this
court.

I.   The relator has filed a motion in this court
to dismiss the appeal for the following reasons:

"First.   Because appellants have failed to file in
this cause in this court so much of the record and
evidence made and adduced in the trial of same in the
circuit court as is necessary to a full and complete
understanding of all the questions presented to this
court for decision.

"Second.   Because the abstract filed by appellants
in this cause does not set forth a copy of so much of
the record of the trial of this cause in the circuit court

as is necessary to be consulted in the disposition of the errors assigned in their briefs.''

Counsel for relator has not brought up a full copy of the evidence, nor a certificate of the clerk of the circuit court showing that appellants' abstract of the record does not contain all the evidence introduced at the trial, or any other evidence of that fact. The record before us, apparently, contains a full abstract of all the evidence introduced at the trial, and in the absence of a proper showing to the contrary, we must presume counsel for appellants obeyed the statutes and the rules of this court governing that matter, since the allegations of the motion do not prove their own truthfulness. This alone would justify the court in overruling the motion, but when we consider the oral contention of counsel made in the argument of this case before this court, we are satisfied therefrom that there is no merit in the motion in point of fact. It is not contended that the abstract does not contain a full and fair statement of all the testimony introduced at the trial, but the objection is made that it is stated in a narrative form, and that the questions and answers are not set out *in haec verba* as they were propounded to and answered by the witnesses upon the stand. The rules of this court do not require that, except where the questions and answers are absolutely necessary in order to convey to this court the intention and meaning of the witness, and where that object cannot be done by stating the testimony in narrative form, as was held in the case of Bradley v. Bradley, 119 Mo. 62, the questions and answers should be set out. But ordinarily the narrative form is preferable, for the reason that it greatly shortens the record, and generally eliminates all superfluous and immaterial matter therefrom. None of relator's rights have suffered from the presentation of the evidence in this case, in the narrative form.

We are, therefore, of the opinion that the motion should be overruled.

II. There are several legal propositions discussed in briefs, as there were several argued orally before the court, but in the view we take of the case, it will not be necessary for us to consider but one of them, as it goes to the very marrow of relator's right to a recovery.

Section 8161, Revised Statutes 1899, reads as follows: "In all congressional townships in this State in which there are fifteen householders, they shall have the right to sell their sixteenth sections, or such lands as have been or shall be selected in lieu thereof; and upon a petition of a majority of such householders, the county court shall make an order, a copy of which shall be furnished the sheriff, directing him to expose such lands to sale at the courthouse door, and while the circuit court of the county is in session, after giving twenty days' notice thereof: *Provided,* that in any fractional township in this State wherein less than fifteen householders now or shall hereafter reside, a majority of the householders of such fractional township may petition the county court for an order to sell the sixteenth section in such township, or other lands which have been or shall be selected in lieu thereof, in like manner as hereinbefore provided."

This record contains no evidence that the township in which this land is situate is a fractional township, as referred to in the proviso of that section; so, we must therefore presume it was an ordinary full congressional township. By reading that section, it will be seen that the county court has no authority upon its own instigation to sell the school lands of the respective townships of the county, but that its authority and jurisdiction to order such lands to be sold in the ordinary townships depend upon two conditions precedent or jurisdictional facts—first, that

the township must have at least fifteen householders; and, second, that a majority of them must petition the county court to make an order to sell the lands.

The only evidence contained in this record bearing upon that question is the following:

"Q. State who assisted you in getting up the petition to the county court, asking for the sale of these lands? A. I could not say.

"Q. State, if you know, if there were fifteen names on this petition? A. There certainly was."

This evidence fails to show the county court acquired jurisdiction to order the sale of these lands for two reasons: First, the statute requires a majority of the householders of such a township to petition the court for an order of sale, and this evidence does not show a majority of them signed the petition referred to by Frisbee. He testified that "there certainly were" fifteen who signed it, but he does not pretend to state those fifteen were a majority of the householders of that township. There may have been fifty or more. A congressional township is six miles square and contains thirty-six sections of land, and for this court to presume only twenty-nine householders resided therein would be doing great violence to such facts regarding most congressional districts of this State. But, independent of that, in the absence of all evidence upon that question, we have no right to presume the fifteen referred to by Frisbee in his testimony were a majority of those of that township. If the county court had found that fifteen were a majority of them, then quite a different proposition would be here presented; but that court made no such finding—in fact, there is no evidence which even tends to show that the petition asking for the order of sale was ever filed or presented to the court for its consideration.

The second reason why the county court did not acquire jurisdiction to make the pretended order of

sale was, the evidence totally fails to show that the fifteen householders who signed the petition were residents of or lived in the township in which this land was located.

While said section does not in express terms require the county court to find that they were residents of the township, yet it requires that they must be, and in the very nature of things no one else could make that finding for the court in the absence of an express statute to the contrary.

We are, therefore, of the opinion that under this statute the county court had no jurisdiction to make the order of sale, and, consequently, no title passed, even though it be conceded the land was sold by the sheriff to Frisbee. [McDonald v. Mangold, 61 Mo. App. l. c. 293; Eaton v. St. Charles, 76 Mo. 492.]

And as was said by this court in the case of Sutton v. Cole, 155 Mo. l. c. 213, "It has long been settled law in Missouri that the jurisdiction of courts of inferior jurisdiction, and of courts that do not proceed according to the course of the common law, must affirmatively appear on the face of the proceedings." Citing State v. Metzger, 26 Mo. 65; Hansberger v. Railroad, 43 Mo. 196; Edmonson v. Kite, 43 Mo. 176; Schele v. Leland, 45 Mo. 289; Iba v. Railroad, 45 Mo. 469.

The county court is not only a court of inferior jurisdiction, nor was it proceeding according to the course of the common law in the sale of these school lands, but it was acting under special statutory directions, which must have been observed before it could acquire jurisdiction of the subject-matter.

We are, therefore, of the opinion that the judgment should be reversed.

It is so ordered.

All concur.