## Waters v. Commonwealth.

(Decided October 12, 1916.)

### Appeal from McCreary Circuit Court.

1. Infants—Juvenile Delinquents.—Under section 331e of the Kentucky Statutes the county courts have exclusive jurisdiction of the disposition that shall be made of a male child under seventeen years of age who is charged with or arrested for a violation of the laws of the State.

2. Infants—Trial—Jurisdiction of Courts.—The circuit courts of the state have no jurisdiction to indict or try a boy under seventeen years of age for a violation of the laws of the state unless he has been transferred to the circuit court by order of the county court.

3. Infants—Trial and Conviction—Jurisdiction.—Although a boy under seventeen years of age did not make any objection in the circuit court to the proceedings under which he was tried and convicted, he could raise in this court for the first time the question of the want of jurisdiction of the circuit court.

4. Criminal Law—Appeal and Error—Judgment.—In a direct attack of a judgment by appeal, especially if the trial court is one of limited and special jurisdiction, the facts necessary to confer jurisdiction upon the trial court must affirmatively appear from the record on appeal, and such facts will not be presumed to have been shown in favor of the jurisdiction of the trial court.

L. G. CAMPBELL for appellant.

M. M. LOGAN, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The grand jury of McCreary County, on June 21, 1916, returned an indictment against defendant (appellant), charging him with having wilfully murdered Will Flynn, by shooting him with a pistol. At the August term of the McCreary Circuit Court the defendant was tried under the indictment, and the jury returned against him this verdict: "We, the jury, do agree, and find the defendant guilty and fix his punishment at two years in the state prison. R. P. Baird, foreman." Upon this verdict the court rendered judgment that the defendant "be taken to the Kentucky House of Reform at Greendale, Kentucky, there to be subjected to the strict rules of said institution until he is twenty years old." The motion for a new trial does not appear to have been acted upon. None of the evidence heard upon the trial nor any of the instructions are made a part of the record, either by bill of exceptions or any order of court, and we are not favored with a copy of either, the record being totally devoid of either evidence or instructions, although it is recited in the motion for a new trial that the court gave to the jury instructions one, two, three and four. Counsel for appellant raise but two questions, they being that the verdict is void because, as is insisted, it does not conform to the indeterminate sentence law, which was in effect at the time of the commission of the offense, and that the judgment should not have sentenced the defendant to confinement in the House of Reform for a greater period than two years, the time fixed by the verdict of the jury.

As to the first contention, it is sufficient to say that it was made in the case of Futrell v. Commonwealth, 141 Ky. 310, in which the verdict was for the same offense of which the jury found this defendant guilty, and in which the jury fixed his punishment exactly as did the jury in this case. It was therein held that as the jury fixed the minimum period of confinement there was nothing of which the defendant could complain, inasmuch as if the indeterminate sentence law had been followed by the jury he would have been given as a maximum period of confinement a greater punishment than was given him. Under the authority of that case, this point cannot avail the defendant on this appeal.

In regard to his second contention, we find that by subsection 13, of section 2095b, Kentucky Statutes, juvenile offenders may be committed to the House of Reform for a period of any time not exceeding their minority "upon conviction in any of the courts of this Commonwealth of a felony or misdemeanor," but it is provided by subsection 13a of the same section that "No child under the age of ten years shall be sentenced to or confined in the School of Reform, or any State penal institution." It is furthermore provided by subsection 19a of the same section that the confinement in the House of Reform may be until the juvenile offender shall reach the age of twenty-one years; but that he shall be given the benefits of the parole provisions the same as govern the right of parole to inmates of the penitentiary. From these statutory provisions it will readily be seen that the court committed no error in ordering the defendant confined in the House of Reform until he was twenty years of age. But this would not deprive him of the right to a parole, the same as is given to penitentiary convicts. We conclude, then, that there was no error committed by the court in not limiting his sentence to the two years' confinement fixed by the jury.

This leaves for determination the remaining and more serious question presented by the record, which is—had the court jurisdiction of either the defendant or the offense? It is recited in the judgment (and which we are authorized to conclude was established by the evidence) that "it appearing to the satisfaction of the court that the defendant is less than fifteen years of age, and will not be fifteen years until February 17, 1917." It was for this reason that the defendant was sentenced to

be confined in the House of Reform, instead of being sentenced to a term in the State penitentiary.

·The legislature of this State in recent years, out of charitable considerations for delinquent children, which include juvenile offenders under seventeen years of age if a male, and eighteen years of age if a female, and with a view to their improvement and the bettering of their condition, and, if possible, to reclaim them so that they may become valuable and useful citizens, has enacted statutes providing for the apprehension, trial and disposition of such delinquents, including those who commit offenses against the criminal laws of the State. These statutes are a part of Chapter 18 of the General Statutes, and for the most part are found in section 331e of the Kentucky Statutes, and its various subdivisions. Subsections 4 and 5 of that section deal particularly with the apprehension and disposition of the delinquent who has committed a crime, the latter subsection being:

"When any child within the provision of this act is arrested with or without a warrant it shall, instead of being taken before a justice of the peace or police magistrate, be taken directly before the county court, or if it shall be taken before a justice of the peace or police magistrate upon warrant sworn out in such court, or for any other reason, it shall be the duty of such justice of the peace or police magistrate to transfer the case to such county court, and it shall be the duty of the officer having the child in charge to take the child before said county court; and in any case the court may proceed to hear and dispose of such case in the same manner as if the child had been brought before the court upon petition as herein provided. In any case the court shall require notice to be given and investigation to be made as in other cases under this act, and may adjourn the hearing from time to time for that purpose.

"The court may in its discretion in any case of a delinquent child brought before it as herein provided, permit such child to be proceeded against in accordance with the laws that may be in force in this State governing the commission of crimes, and in such case the petition, if any, filed under this act shall be dismissed and the child shall be transferred to the court having jurisdiction of the offense."

This enactment has been before this court for construction and application in the following cases: Comlth. v. Yungblut, Judge, 159 Ky. 94; Comlth. v. Franks, 164 Ky. 239; Talbot v. Comlth., 166 Ky. 659, and Comlth. v. Davis, 169 Ky. 681. In the Yungblut case a person had been tried and convicted for an offense denounced by section 331d of the Kentucky Statutes, and an appeal was prosecuted from the county court, where the judgment was rendered, to the circuit court of Campbell county, and the judge of the circuit court was about to take jurisdiction of the appeal when a petition was filed in this court seeking a writ of prohibition preventing him from doing so. It was determined by this court that the statute did not provide for an appeal in such cases, and that the circuit court could not entertain jurisdiction of any attempted appeal, and the writ prayed for was granted, directing the judge of the Campbell circuit court, who was the respondent in the prohibition proceedings, to dismiss the appeal for want of jurisdiction. During the course of the opinion, and in determining that the act gave the respective county courts of the Commonwealth exclusive jurisdiction of such delinquents, including the character which we have here, this court said:

"It therefore seems manifest that if the important parts of the act that give to the county judge the large discretion allowed in suspending, controlling and reducing the judgment are to have any meaning or effect, the county court must have not only exclusive but final jurisdiction, and we so construe the act." The exclusive jurisdiction mentioned in the excerpt which we have made from that opinion is not limited to the offense there under consideration, but it covers the entire matters provided for by the act, including the initiation of prosecutions against juvenile criminals, as appears from the other cases referred to.

In the Franks case the defendant was indicted for grand larceny, and he filed his affidavit showing that he was under the age of seventeen years, and moved the court to dismiss the prosecution against him. This was overruled, but the court being of the opinion that it had no jurisdiction of the defendant's person, transferred the case to the county judge, where the defendant might be dealt with as a juvenile offender. Both the defendant and the Commonwealth prosecuted an appeal from

this judgment, and it was determined in the opinion that the court did not have jurisdiction of the offense, nor did it have a right to transfer the case to the county court, but should have sustained the motion and dismissed the prosecution. After referring to different sections of the act bearing upon the question, and which we have herein referred to, the opinion says:

"Appellant insists the circuit court was without jurisdiction to make the transfer; that it had power only to dismiss the proceedings and discharge the defendant.

"The statute, in express terms, gives the county court exclusive jurisdiction in all cases coming within the terms and provisions of the act. Section 331e, subsection 2; Commonwealth v. Yungblut, 159 Ky. 94. And, while subsection 5, *supra,* provides for a transfer to the county court of proceeding against a delinquent child, improperly begun before a justice of the peace or police magistrate, there is no provision in the statute for a transfer to the county court of a proceeding begun by indictment in the circuit court."

In the Talbot case the defendant, a boy sixteen years of age, was indicted by the grand jury of Daviess County for the offense of malicious cutting; he was tried, convicted and sentenced to the penitentiary at Eddyville. He prosecuted an appeal from the judgment, insisting that as the record showed he had not been apprehended by or brought before the county court of Daviess County in the manner provided by the act under consideration, the circuit court had no jurisdiction to try him and should have dismissed the indictment. This contention was upheld by this court and the judgment was reversed with an order directing the lower court to dismiss the prosecution. In doing so, it is said in the opinion:

"It will thus be seen that the statute gives to the county courts of the several counties of this State exclusive jurisdiction of the disposition to be made of a male child seventeen years of age or under who has violated any law of this State, and makes express provision that a child coming within this age who has been apprehended for a violation of law shall be brought before the county court. This court may in its discretion, as provided in the statute, permit such child to be proceeded against in accordance with the laws of the State, and, to accomplish this end, may transfer the child to

the custody of the court having jurisdiction of the offense. The statute deprived the court of jurisdiction, and this want of statutory jurisdiction may be relied on in cases like this as a ground for reversal although not raised in the circuit court. The circuit court has jurisdiction only to indict and try juvenile offenders when they have been transferred to that court by the county court in the manner authorized by the statute.''

In the Davis case the defendant was first brought before the county court; he was charged with forgery, and the court held him to answer the charge before the grand jury, which afterwards indicted him, the indictment being dismissed by the circuit court on the ground that the culprit had not been summoned to appear before the circuit court, as required by subsection 2 of section 331d of the statutes under consideration. The Commonwealth prosecuted an appeal, and this court affirmed the judgment. There had been no notice given to any parent, guardian, or person having the offender in charge, as directed by the statute, and it was said in the opinion that ''in failing to give the notice required by the statute the county court was without jurisdiction either to proceed with the trial of the appellee as a juvenile offender, or to try the question of transferring him to the circuit court for trial under the criminal laws of the State. The circuit court, however, not having jurisdiction to try appellee, the proceedings in that tribunal do not constitute a bar to further proceedings in the county court.''

From these opinions it is manifest that the various county courts in this Commonwealth have exclusive and original jurisdiction to apprehend and deal with delinquent children, including juvenile offenders, such as we find the defendant to be in this case. The circuit courts have no right or authority or jurisdiction to initiate, much less to try, such an offender without his first being apprehended by the county court in the manner pointed out by the statute, and, in the way therein pointed out, transferred to the circuit court. So the question arises whether in this case, which is clearly one arising under the juvenile statutes of this State, it will be presumed on this appeal in favor of the jurisdiction of the circuit court who tried the case that it had jurisdiction to try it. In other words, will it be presumed by the appellate court that the trial court, when

it is not of general or original jurisdiction (as we have seen is the case with the trial court below), had jurisdiction of both the offense (the subject matter) and the person of the defendant when the record is entirely silent as respects both?

In considering this question it should not be confused with the rule allowing presumptions in favor of the jurisdiction of courts of general and original jurisdiction when their judgments are collaterally attacked, for whatever may be the rule on that subject, it is by no means the same as to a direct attack such as is made by an appeal from the judgment. Bearing upon the precise question which we have here, we find the rule stated in Freeman on Judgments, fourth edition, section 537, to be: "On appeal, presumptions in regard to the regular acquisition of and jurisdiction over the defendant in the court below do not exist. If the record fails to show that jurisdiction has been obtained, the judgment will be reversed." This same rule is stated with equal positiveness in the fourth volume of Corpus Juris, on page 48, in this language: "On appeal or writ of error all the facts essential to sustain the jurisdiction of the trial court must be shown affirmatively by the record, particularly when the court whose judgment is under review is one of inferior and limited or of special jurisdiction, or where proceedings are authorized by statute only, and are unknown to the common law, but it is not necessary that the jurisdiction be set out in the complaint and summons in such a case."

The text is supported by many cases from numerous courts and seems to be the universally recognized one upon the subject. Among the cases referred to, we cite the following: Board of Commissioners of Fountain County v. Coates, 17 Indiana 150; I. C. R. R. Co. v. Burleson, 4th Ala. Appellate Court 384; Doddridge v. Patterson, 222 Mo. 146. Many authorities are referred to in these opinions, and we will not undertake to state the facts showing how the question arose in each case, contenting ourselves with taking short excerpts from them bearing directly upon the point under consideration.

In the Missouri case referred to the rule is stated: "It has long been the settled law in Missouri that the jurisdiction of courts of inferior jurisdiction, and all courts that do not proceed according to the course of

the common law, must affirmatively appear on the face of the proceedings."

In the Alabama case this language is used: "There is nothing in the transcript to show that the case was. appealed from a judgment rendered by the justice, or that such judgment was in fact rendered, and as the court is not shown to have been exercising appellate jurisdiction, and was without original jurisdiction to act in the premises, there is no legal judgment."

From the Indiana case we read: "But we are of the opinion that it should appear from the record or be within the judicial knowledge of the appellate Court, that the inferior tribunal, before which a case was tried, had authority to act in the premises, either legally or in fact."

A well considered case upon the subject is that of Burke v. Inter-State Savings, etc., Association, reported in 87 Amer. St. Rep. 416, in which the court says upon the precise questions:

"Upon direct attack by appeal, the presumption that the court rendering a judgment by default had jurisdiction of the person of the defendant does not obtain. Unless the record in some way discloses the acquisition of jurisdiction over the defendant, the judgment will be reversed by the appellate court: Schloss v. White, 16 Cal. 65; Cannoly v. Alabama, etc., R. R. Co., 29 Ala. 373; 1 Black on Judgments, sec. 93; 2 Freeman on Judgments, sec. 536."

But we are not altogether dependent upon the rule as announced by the courts of other jurisdictions for a proper solution of the question. In the case of Jacob's Admr. v. L. & N. R. R. Co., 10th Bush 263, this court had under consideration whether or not a recital in the judgment of a county court in this Commonwealth appointing a personal representative of a decedent should affirmatively show the facts necessary to give it jurisdiction to appoint a representative for the particular decedent; that is, whether it should show that the decedent died within the county, or that he resided there. It was determined that the statement of such facts was not necessary for two reasons: (a) that the question was raised in a collateral attack of the judgment of the county court appointing the administrator, and (b) because the county court was one of exclusive and original jurisdiction of such matters. In the course of the opin-

ion it is said: "Under the laws of this state no other than a county court can probate a will or grant letters of administration; and in every instance where there is a will to be proved, or a case of intestacy in which the intestate leaves property of any character or description in this state, some one of its county courts may rightfully assume jurisdiction.

"There is a marked distinction between a court having general and exclusive jurisdiction over a limited number of subjects and a court having no jurisdiction over certain subjects except in cases in which certain essential and indispensable facts shall exist. In the latter case the rule that the facts conferring the jurisdiction must appear in the record of the proceedings applies to all courts, circuit as well as county.

"The rule does not grow out of nor depend upon the facts that the court had jurisdiction of only a limited number of subjects, but that it has not full and complete jurisdiction of the subject matter about which it assumes to act.

"If the jurisdiction over the subject matter is complete and unlimited, the action of the court will always be taken to be within its authority and jurisdiction, unless the contrary appears."

The remarks of the court just quoted were dealing exclusively with a collateral attack, and with the judgment of a court of exclusive jurisdiction over the subject. Further on in the opinion the distinction between a collateral attack and a direct one by appeal is recognized when the court says: "Whether upon an appeal an order failing in this regard would or would not be reversed, we do not now decide; but it cannot be treated as void in a collateral proceeding." From these excerpts it will be seen that this court, to say the least, entertained great doubt as to whether jurisdictional facts would be presumed in favor of a judgment of a court of general jurisdiction on an appeal from that judgment, when such facts were not affirmatively shown in the record on appeal. It is equally manifest that there would have been no doubt entertained by this court if the trial court had only a limited, special or secondary (so to speak) jurisdiction, as has the circuit court which tried the case now before us.

In the still later case of Baldridge v. Baldridge, from this court, reported in 117 S. W. 253 (not reported),

the rule, as stated by the text writers, *supra,* is approved by this court. In that case the record did not show that some of the defendants had been summoned. It was entirely silent upon this subject. It, of course, was necessary that a summons should have been served, in the absence of an appearance, to have given the trial court jurisdiction of the person of the defendant. It was contended therein that this court on appeal would presume that the lower court had jurisdiction of the person of the defendant. That contention was denied, and in doing so, the court said: "When a judgment is attacked collaterally, it is presumed that the summons was duly served; but, on a direct appeal from a judgment, there is no presumption that process was served, where no evidence of service appears in the record."

A somewhat analogous question would be presented if a judgment for the full amount claimed, but below the original jurisdiction of the trial court, and of which it could only acquire jurisdiction by appeal from an inferior court, were before this court for review and the transcript should fail to show that the trial court from which the appeal is prosecuted acquired jurisdiction by appeal from the inferior court. In the absence of such an affirmative showing it could not be presumed on appeal that the proceedings originated in the inferior court, and that the trial court's jurisdiction was appellate only. These matters should affirmatively appear in the record. It is so held everywhere, so far as we are advised.

We are aware of the rule so thoroughly established that in the absence of the evidence heard upon the trial, or all of it, the presumption will be indulged that it, or the part which is lacking, would authorize the judgment, and that regularity will be presumed in the proceedings below in the absence of an affirmative showing to the contrary; but all this is quite removed from the question we have here. The rule just mentioned does not deal with questions of jurisdiction, but only with questions of evidence, practice, and intermediate steps between the acquiring of jurisdiction and the rendition of judgment. Nor do the cases from this court dealing with inquisitions of persons of unsound mind affect the question we have here. The cases upon that subject are collected and discussed in Louisville Title Co. v. Darnell's Committee, 149 Ky. 312, from which will ap-

pear that this court has entertained different opinions
at different stages of its history in regard to what the
record of the inquisition should show with reference to
jurisdictional facts. But it must not be overlooked that
in all those cases the attack upon the inquisition was a
collateral one in which the presumption in favor of ju-
risdiction is given a more extensive application than
when the judgment is attacked directly by appeal.
Furthermore, in all those cases the judgments sought
to be upheld by the presumption in favor of jurisdic-
tion were rendered by courts having concurrent and
original jurisdiction of the subject-matter which, we
have found, is not so with circuit courts trying juvenile
offenders. If the judgment on inquisition should be
questioned by appeal and eventually brought to this
court, the precise question under discussion would be
presented; in such case we have no difficulty in conclud-
ing that if the record was silent as to a jurisdictional
fact it would not be permitted to stand under the au-
thorities referred to. If this rule prevails as to the
ordinary litigant, for a greater reason should it prevail
in cases like this, where the enforcement of corrective
laws enacted for the benefit of infants is involved. We
are, therefore, forced to the conclusion that inasmuch
as the record fails to show that the court below obtained
jurisdiction of the defendant through the provisions
of the statute before mentioned, that it had no juris-
diction to try him, and furthermore, we cannot, under
such circumstances, indulge the presumption that such
prior proceedings were made to appear upon the trial.
It might be said that the question of the jurisdiction
of the court was not raised below, or, at any rate, that
it does not appear to have been raised, and that if the
court did not have jurisdiction that the judgment is
void, and the appeal should have been dismissed. A
sufficient answer to such an insistence is that these ques-
tions were raised in the cases to which we have refer-
red from this court, not including the Davis case, and
in them it was determined that the defendant did not
have to object to the jurisdiction of the court in order
to raise the question on appeal, nor should the appeal
be dismissed, but that the judgment should be reversed
with proper directions to the court below. If such ob-
jection is not required in order for this court to con-
sider it on appeal, neither is a motion for a new trial

necessary, or, if filed, that it should be overruled, in order to present the question to this court.

It is therefore ordered that the judgment be and it is reversed, with directions for proceedings consistent with this opinion.