## CHILDERS v. COMMONWEALTH.

Court of Appeals of Kentucky.
May 4, 1951.

256

J. E. Childers, Pikeville, for appellant.
A. E. Funk, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

The appellant, Homer Childers, has been convicted of voluntary manslaughter for the death of Mrs. Josephine Ratliff and sentenced to fifteen years imprisonment.

■ It early developed in the course of the trial that the defendant was under seventeen years of age and later specifically shown that he was sixteen when the tragedy occurred. Thus, the circuit court had no jurisdiction to try him in the absence of a showing that the jurisdiction of the county court, sitting as a juvenile court, had been waived. KRS 199.080. When it develops in the course of a trial that the defendant is a juvenile within the terms of the statute, it is incumbent upon the Commonwealth to show affirmatively that the circuit court has jurisdiction and that there has been a proper transfer from the juvenile court of the criminal prosecution. Goodfriend v. Commonwealth, 216 Ky. 573, 288 S.W. 330.

There is nothing of record to show that the purported disposition of the accused juvenile, as hereinafter described, was in fact certified to the circuit court; hence, it was without authority to proceed. Mattingly v. Commonwealth, 171 Ky. 222, 188 S.W. 370; Robinson v. Kieren, 309 Ky. 171, 216 S.W.2d 925; Gipson v. Commonwealth, 312 Ky. 144, 226 S.W.2d 758.

■ After the judgment, the appellant filed a schedule directing the circuit clerk "to copy and certify for the purpose of appeal all the records filed in your office in this case except those contained in the bill of exceptions herein." The clerk conformed and certified the transcript of record to be "a true, correct and complete transcript and copy of the entire record" in the case "as appears of record in my said office and on file therein as called for in the schedule copy herein." There is nothing in that record even intimating that the accused had been given a hearing in the county court, juvenile division.

After the appeal had been perfected and briefed by the appellant, a document of 25 pages was lodged in the office of the clerk of this court without notice to the appellant or permission of the court. It purports to be a record of a hearing in the juvenile court and contains an order of "certification to the Pike Circuit Court and grand jury." The circuit clerk attaches his certificate that it is a transcript of the juvenile court records "as appears of record in my said office and on file therein."

Sec. 756, Civil Code of Practice, which is applicable in a criminal case, provides, "the Court of Appeals may, on motion, after ten days' notice to the adverse party, or his attorney, allow a party to file a transcript of an additional portion of the record."

Our Rule 1.220 is as follows: "The Court will conclusively presume, after submission, that a record brought up to this Court on schedule filed in the clerk's office of the inferior court, as prescribed by Section 737 of the Code of Practice, is the complete record, and that all parties interested have consented to try the appeal on such

record. Before submission the Court will, in its discretion, allow a transcript of other parts of the record to be filed when deemed necessary in furtherance of justice."

In the absence of a motion of which the adverse party has notice and the permission of this court, the contents of the purported record will not be considered as it might affect the decision that the trial court was not shown to have had jurisdiction.

■ Perhaps we should stop here. But since there may be another trial, for the guidance of the court we consider the matter of the transfer of such a case from a county court. There is no order or other evidence in the circuit court showing the transfer even in the supplemental record lodged here. KRS 199.080 provides that if the county court believes that a juvenile has committed a crime, the court "in its discretion may relinquish jurisdiction over the child and permit him to be proceeded against in accordance with the laws governing crimes, and in such event make an order transferring the case to the court having jurisdiction of the offense." The circuit court may not take judicial notice of the order. The record, or at least the order, must be filed in the court to which the case has been transferred; else the transfer is not completed. We have analogous practices in the transfer of a criminal case on granting a change of venue, KRS 452.250, and of an action involving title to real estate from a quarterly court to the circuit court, KRS 25.420. It is to be borne in mind that there is no presumption of jurisdiction in the circuit court in the trial of a juvenile as it is in other cases, so it must affirmatively appear. Waters v. Commonwealth, 171 Ky. 457, 188 S.W. 490; Robinson v. Kieran, supra, 309 Ky. 171, 216 S.W.2d 925. However, if the order of transfer had actually been made in the county court, failure to furnish the circuit court with a certified copy thereof prior to the indictment is not fatal. It may be done whenever it appears during the course of the trial that the defendant was within the terms of the statute governing disposition of a juvenile delinquent. Baughman v. Commonwealth, 206 Ky. 441, 267 S.W. 231. We cannot escape from the

suspicion that the purported record of the county court was brought to the circuit court after the appeal had been perfected. That is too late. The record of the county court is, therefore, stricken.

We proceed further in view of the possibility of another trial.

■ The deceased, a young woman, and her husband were close neighbors of the defendant and his family, living "in the head of Poor Bottom Fork at Lookout on Marrowbone." They were all on very friendly terms. The evidence is very strong that the shooting was an accident although certain circumstances may be regarded as tending to refute that conclusion. The first heard of the shooting was when the boy, who had been up the hollow with a shotgun hunting squirrels on this afternoon in July, 1949, came running home, very much excited and breathlessly told his family and others present that Mrs. Ratliff had been killed up the hollow. He returned with them to the place. He was taken to Pikeville by his father that afternoon and, according to the testimony of the then county attorney, stated: " * * he fired a shot and he shot one shot and thought he had missed, and then he reloaded his gun and shot again, and the second shot he realized it wasn't a squirrel, but that he had shot some person, and then he went down to where she was and said to her in substance, 'I wouldn't have shot you, Josephine, but I thought you were a squirrel,' and she answered and says, 'Yes, I guess you did, I should have hollered.'"

The Commonwealth proved this and showed that the body was in a path in a direct line from where two shotgun shells were found, one 28 and the other 55 feet away; that the undergrowth was only three or four feet high and that a person in the path could be easily seen from the places the shells were picked up. Shot had shattered one of the woman's wrists and others had entered her back. There is a bit of evidence by a State patrolman who qualified as a witness on the point that the size of the wounds or spread of the shot indicated that the person who fired the gun was even closer than where the empty shells were found.

The defendant, who bore a good reputation, testified that he shot at a squirrel in a tree and it ran down a limb, and he fired again. He supposed he had killed it and went to get the squirrel and then found Mrs. Ratliff. He did not relate the brief conversation with her as he had to the county attorney and stated he did not remember what he had told that officer when ne was questioned about the killing. But there is no material difference. The place is near both the home of the deceased and the defendant at the boundary line. She had gone up the hollow for her cow. The boy had been there a day or two before and testified that the two shells found at the points described were from his firing there then, and that he was much lower down the hill when he fired on this occasion. The defendant introduced several witnesses who described the place as not being on a relative plane but that the body was above the boy, and he had fired up-hill; also, that there was larger and higher undergrowth than as described by the Commonwealth's witnesses. They testified that by tests the woman could not have been easily or at all seen by the boy at any of the locations.

We have a case very much like the present one in ·Vires v. Commonwealth, 308 Ky. 707, 215 S.W.2d 837. There is a little difference in that in the Vires case the defendant mistook the movement in the bushes of the man he shot as that of a fox, while here the defendant's testimony is that he didn't know the person he shot was there at all. However, his statement to the county attorney as to what he said to Mrs. Ratliff indicates that he had seen her and thought she was a squirrel. That and the testimony of the Commonwealth as to the woman being within his vision brings the · case clearly within the holding in the Vires opinion that the evidence was sufficient to take the case to the jury on the question of guilt or innocence of the accused.

█ It also makes applicable, however, the decision in the Vires case that it was error not to have given an instruction of involuntary manslaughter based on the careless use of a deadly weapon. The Commonwealth argues that that ruling in the

Vires case is unsound, but we are not persuaded that it is. The court here instructed on voluntary manslaughter under both the theory of the killing having been committed in sudden heat of passion and as the result of wanton and gross negligence in the handling of a deadly weapon. If this latter theory was a reasonable one, then likewise is the theory of the misdemeanor based upon carelessness or negligence.

█ We must condemn one volume of the transcript of evidence. It is a carbon copy upon thin paper. The attention of the official stenographer and the circuit court clerk is called to our Rule 1.100 concerning such transcripts. The rule should be observed rather than ignored. If this were the complete record, we would order a reduction in the fee, but since the transmission of only one volume of carbon may have been an error, we will waive the imposition of a penalty.

The judgment is reversed.