### VALENTINE GARZA v. THE STATE.

No. 1371. Decided June 1, 1898.

1. Murder—Degrees—Irregular Verdict.

A verdict in a murder case which finds defendant guilty but fails to find the degree of murder, though it assesses a punishment for murder in the first degree, is irregular and not void; and while it would necessitate a reversal and new trial, it can not be construed into an acquittal of murder in the first degree.

2. Same—Plea of Former Jeopardy—New Trial.

Where the verdict for murder in the first degree is irregular, in that it does not specifically find the degree, and a new trial is granted, defendant can not maintain a plea of former jeopardy upon a second trial on the ground that such verdict operated an acquittal.

3. Murder in Perpetration of Robbery—Evidence—Impecuniosity of Defendant.

On a trial for murder in the perpetration of robbery, it is competent to prove the impecunious condition of defendant prior to the homicide, and that thereafter he was found in possession of money.

4. Same—Charge.

On a trial for murder, a charge of court which instructs the jury, in effect, that if the homicide was committed on a motive of robbery it would be murder in the first degree, is correct.

5. Continuance—New Trial.

A motion for new trial based upon the refusal of an application for continuance is properly overruled where, in addition to a manifest want of diligence to procure the attendance of the witness, it is apparent that the testimony of said witness would not probably be true and would not probably change the result upon another trial.

APPEAL from the District Court of Webb. Tried below before Hon. A. L. McLEAN.

Appeal from a conviction for murder in the first degree; penalty, death.

The indictment charged appellant with the murder of an unknown person, in Webb County, on or about the 11th day of April, 1897. A previous trial had resulted in a conviction, with punishment assessed at imprisonment in the penitentiary for life; but a new trial had been granted because the verdict did not find the degree of murder. On the trial from which this appeal is prosecuted defendant pleaded former jeopardy, based upon this prior verdict.

All the essential facts pertaining to the murder will be found in the opinion, and no further statement is required.

*A. Winslow,* for appellant.—The court erred in placing this defendant on trial in this cause and again trying him on the same indictment and for the same offense, for this, viz: Because this defendant was at the preceding term of this court, to wit, at the May term, 1897, to wit, on the second day of June, 1897, placed upon his trial in said court on the same indictment, for the same identical crime, and before the same judge, to wit, the Hon. A. L. McLean, and was duly and legally tried in said court at said May term, 1897, of said court, before the same judge, on the same indictment, for identically the same offense, by a jury of twelve good and lawful men, to wit, Geo. H. Lanham and eleven others, who were duly and legally impaneled and sworn, as provided by and in accordance with law, to try said cause, and who, after hearing the indictment read and hearing the defendant's plea of not guilty thereto, and after hearing all the evidence adduced, the argument of counsel thereon, and receiving the written charge of the court, retired to consider of their verdict, and thereafter, to wit, on the same day, to wit, on the second day of June, 1897, returned into open court with the following verdict, to wit: "Cause No. 2198. State of Texas v. Valentine Garza.—We the jury in the above named cause find the defendant, Valentine Garza, guilty as charged in the indictment, and assess his punishment at confinement in the State penitentiary for life. Geo. H. Lanham, Foreman." Which said verdict was received and accepted by the court, and said jury immediately discharged by the court without the permission or consent of this defendant, and without in any manner consulting this defendant in regard thereto, and thereupon the court immediately rendered judgment on said verdict against this defendant, adjudging him guilty of murder, with his penalty affixed therein at confinement in the State penitentiary for life, and then and there caused said judgment to be entered of record in the criminal minutes of said court in volume O, No. 1, on page 64. That the finding and returning into open court of said pretended verdict by the jury was in law nothing more or less than a declaration in writing by the jury addressed to the court informing him that they were ready to agree to a verdict and plainly telling him therein the kind of verdict they were ready to return, whose duty it was to see that the verdict was in legal form. And the court erred in receiving and accepting said pretended verdict and discharging the jury from further consideration of said cause, without first procuring the consent of this defendant thereto; and the judgment of conviction rendered thereon against this defendant, adjudging him guilty of murder, was void, and to try him again on the same indictment, for the same offense, in the same court, and before the same judge, was to put him twice in jeopardy of his life and liberty, in open violation of section 14, Bill of Rights of the Constitution of this State, all of which the court judicially knew, without the aid of any plea, proof, or motion.

The placing of appellant on trial at the May term, 1897, of said court, and the reception of said pretended verdict as shown in the above assignment of error, and the discharge of that jury by the court, without con-

sulting appellant or in any manner obtaining his consent thereto, constituted such jeopardy of his life and liberty within the purview of section 14 of the Bill or Rights of the Constitution of this State, as to put it beyond the power of any court to again try him on the same indictment, for the same offense, in the same court, and before the same judge, with or without any plea of former jeopardy. Bill of Rights, Const. 1876, sec. 14; Powell v. State, 17 Texas Crim. App., 345-365; Robinson v. State, 21 Texas Crim. App., 160-162; Foster v. State, 25 Texas Crim. App., 543-546.

The court erred in admitting over defendant's objection the following testimony of Sheriff L. R. Ortis, a witness for the State, viz: "On receiving defendant in jail after his arrest charged with the crime in this cause, I searched him and found three $10 bills in Mexican currency in one of his back pockets," for this, viz., because there was absolutely no testimony in the cause or circumstance in the case that showed or tended to show that deceased had or ever had the money in question, or any money whatever, at or before the killing, or at any time; that all of the testimony in the cause pertaining to the dress and other appearances of the deceased, before and after the time of the killing, absolutely repelled the presumption that he was possessed of any wealth whatever.

A capital conviction ought to be set aside on appeal if, over the objection by defendant, illegal evidence was admitted against him, and it is apparent from the record that he duly reserved exceptions thereto. Such error is presumed to have been to his prejudice, and such conviction can not be sustained by the sufficiency of the legal evidence. Hester v. State, 15 Texas Crim. App., 567-578; Tyson v. State, 14 Texas Crim. App., 388-391; Preston v. State, 4 Texas Crim. App., 186-201.

The charge was on the weight of the evidence in this, that it authorized the jury to consider robbery as the motive for the alleged crime, and therein assumed the existence of a state of facts that was not proved, for this: the evidence was wholly insufficient to show that robbery was the motive for the alleged crime, and in the absence of testimony to show any motive or malice demanded, if it demanded anything, a charge upon murder in the second degree. Said charge submitted robbery as a motive for the alleged crime, without any allegation in the indictment for its basis or any evidence to support the proposition. Tooney v. State, 5 Texas Crim. App., 192; Croell v. State, 25 Texas Crim. App., 596; Powell v. State, 12 Texas Crim. App., 238.

*W. W. Walling* and *Mann Trice*, Assistant Attorney-General, for the State. [No briefs found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death, and prosecutes this appeal.

Appellant presented what he terms a plea of former jeopardy, and we find in the record the proceedings of a former trial of this case at a

former term of the District Court of Webb County. No action appears to have been taken or invoked on this plea. It is insisted, however, that the trial court must take cognizance of proceedings had in the same case, and that it was bound to take judicial cognizance of the former trial, and what was done thereat; and it is urged that because the jury had rendered the following verdict at the former trial, to wit: "We, the jury in the above named cause, find the defendant, Valentine Garza, guilty as charged in the indictment, and assess his punishment at confinement in the State penitentiary for life. Geo. H. Lanham, Foreman,"—that same was, in effect, an acquittal of the defendant of murder in the first degree, and that he could not again be put on trial for said offense; and, in fact, it is insisted here that appellant can not be put on trial for any offense, because said verdict was void, and the effect was to completely acquit appellant of any offense. As a part of the proceeding of said former trial, a motion for a new trial is found in the record, which was granted. Among various grounds assigned why the court should grant a new trial, is: "(6) Because the verdict of the jury is contrary to law, in this: it fails to find of what degree—whether of the first or second degree." It has been repeatedly held by this court that a verdict of this kind is erroneous, and that, if a new trial is not granted by the court below, this court will reverse the judgment; the effect of such holding being that the statute requires the jury, whenever they find a defendant guilty of murder, to find of what degree,—whether of the first or second degree,—and that the failure to do this is an irregularity which requires a reversal of the case. But such holding is not based on the ground that the verdict is absolutely void, though such expressions may have been used in some of the cases, but the same was not necessary. The verdict in this case can not be construed into an acquittal of murder in the first degree. It is merely an irregular verdict, finding appellant guilty of murder in the first degree. The indictment here charges appellant to be guilty of murder in the first degree, and embraces all inferior grades of felonious homicide. The verdict of the jury finding the defendant guilty as charged in the indictment certainly responds to the allegations in the indictment, because murder of the first degree is the charge in the indictment, and the assessment of the punishment only responds to that degree of murder. The jury failed to state the degree, as required by the statute, and this was the only irregularity in their verdict. This would be cause for a reversal of the case, but it by no means follows on that account that it is void. We hold that the verdict in this case did not acquit defendant of murder in the first degree. If so, unquestionably it would not have been within the power of the court to have again placed him on trial for that offense; but, being an irregular verdict for murder in the first degree, and a new trial having been granted defendant, doubtless because of the defect in the verdict, he can not set up said proceedings as an acquittal of murder in the first degree, and so maintain his plea of former jeopardy. See Du Bose v. State, 13 Texas Crim. App., 419; Robinson v. State, 23 Texas Crim. App., 315. The cases of Powell v. State, 17 Texas Criminal

Appeals, 345; Robinson v. State, 21 Texas Criminal Appeals, 160; and Foster v. State, 25 Texas Criminal Appeals, 543, have no application to the question here under discussion.

Appellant insists that the court committed an error against him in admitting the testimony of the sheriff to the effect that, after appellant's arrest, and before he placed him in jail, he searched him, and found three $10 bills, Mexican currency, in one of his pockets. Said testimony was objected to on the following grounds: "Because there was no evidence showing that the deceased ever had the money in question, or any money, at the time of the homicide; and because said testimony was irrelevant, and did not in the least tend to connect appellant with the crime charged; and because it was calculated to prejudice the rights of the appellant before the jury." If it be true that deceased was not shown to have had any money, and appellant is shown to have been possessed of money, it occurs to us that this testimony would be quite favorable to appellant. This would appear to dispose of his objection. However, there was testimony tending to show the impecunious condition of appellant at the time of the homicide. There was testimony which showed that he robbed deceased of his clothing. True, there was no testimony showing that deceased had the money in question on his person when he was killed. He was a stranger in that country. He only arrived at appellant's the evening before; was permitted to sleep at his camp; was found murdered the next morning; so that, in the nature of the case, it was impossible to tell whether he was possessed of any money or not; but the fact that the motive for the homicide on the part of appellant was robbery, and the testimony tending to show that he had no money prior to the homicide, we think it was competent to show that after the homicide he was found in possession of money.

Appellant also urges as error the charge of the court which instructed the jury to the effect that, if they found that the homicide was committed on a motive of robbery, it would be murder in the first degree. This is in accord with the authorities in this State on the subject. Appellant requested a number of charges, but, in our opinion, none of the same were called for.

Appellant also urges in his motion for a new trial that the court committed an error in overruling his motion for a continuance, predicated on the absence of one Concepcion Garza, whom he alleges was a material witness on his behalf. The diligence shown by him for this witness was not sufficient. This witness at a previous term had been placed under recognizance. On the 7th of October it appears that a forfeiture was taken of the recognizance, and an attachment issued for said witness to Webb County, the same being made returnable on the 23d of October, but was not returned until the 25th of said month, the sheriff stating thereon that after due diligence and search said witness could not be found; that she was not a resident of Webb County. This case was not called for trial until the 18th of November thereafter, so that appellant permitted nearly a month to elapse between the return of process for this witness on the

25th of October until the trial of the case, and he used no diligence whatever to procure the attendance of said witness. However, it does not occur to us that, if said witness had been present, and had testified, it would have affected the result reached in this case. It is alleged that said witness would testify that the clothes which the defendant had in his possession and on his body at the time he was arrested were the clothes of the defendant, and not the clothes of deceased; that said witness had washed and mended said clothing for the defendant prior to the time of the killing alleged in the indictment in this case; and that said witness had also made the sack or wallet for the defendant which was found in his possession at the time of his arrest, and which sack or wallet is claimed by the State to have been taken from the deceased by the defendant at the time of the homicide. In order to test the materiality of this evidence, we will state substantially the evidence on which the State relied for a conviction. Deceased, who was a Mexican, and whose name was unknown, was an utter stranger in that community. He came to the Garcia ranch, where appellant lived, being in charge of a goat herd, late on the evening prior to the homicide. He stated that he was from the interior of the State, and on his way to Mexico; that he was tired and sick, and wanted a place to stop, and rest over night. Manuel Castro, who seems to have had general supervision of the ranch, and to whom deceased made application, told him that he could stop, and expected deceased to go with him and stay all night, but was subsequently informed by him that he had made arrangements with the defendant, whose camp was about a half mile from Castro's. The general appearance and clothing of deceased were noted on that evening by several witnesses. He had on a brown cotton jeans coat and pants, and a new pair of brogan shoes, and carried a wallet, apparently filled with clothing. Deceased went from the water tank, where he met the parties, with appellant, to his camp, for the purpose of spending the night. The next morning early some of the employes of the ranch went to the camp of appellant, and there found the dead body of the strange Mexican. His coat and pants and shoes and the bundle he carried were gone. He was lying stark dead with his drawers and undershirt on. His head was crushed, evidently with some heavy instrument, and a stick of wood or club was found near the body, upon which was found blood and brains. Appellant was not on the place, and could not be found. The record shows that he had been in the employ of Garcia on the ranch as a goat herder for about ten days. The goats, at the time the parties came to that camp, had not been turned out of their pens. Appellant was shown to have been dressed rather roughly when he came to the ranch about ten days before. He brought only the suit he wore, and wore a pair of sandals. While at the ranch he appears to have traded these for a pair of worn-down shoes that had peculiar tacks in the bottom. After the dead body was discovered, and the flight of appellant ascertained, immediate search was made for him. Tracks, evidently made by the shoes worn by him, were followed from the place of the homicide to the track of the International & Great

Northern Railroad, about a half mile distant. There tracks were then followed down the railroad in the direction of Laredo (which was about twenty-five miles from Webb station) for about fifteen miles, where they appeared to leave the road, and could not be followed further. Appellant is shown to have stopped at the house of one Sanchez, who lived about three miles below Laredo, on the night of the 11th of April—the homicide having been committed on the night of the 10th of April. He came afoot, and applied to Sanchez for permission to stay all night, stating that he had come from Green station, where he had been employed cutting corn. He had a wallet of clothing with him. He appeared to be nervous, and left this place about 7 or 8 o'clock the next morning, going in the direction of the Rio Grande River. He told Sanchez that he was traveling. Chacon states that he lived about seven miles from Laredo, down the river, and that about 10 o'clock on the morning of the 12th of April he met the defendant in the woods, and asked him where he was from, and he stated from Corpus Christi; that he was then going in the direction of the river, and asked witness if there was a skiff on the river. Witness directed him to the ranch of Luis Marulanda, and told him that he could probably cross the river there. Marulanda stated that his ranch was about seven miles below Laredo on the river; that appellant came to his house on the 12th of April, and asked him to take him across the river. Witness asked him where he was from, and he said from San Ignacio, in Zapata County; that the defendant had a wallet and a gourd; that the boatman took appellant across the river to the Mexican side; that shortly afterwards (presumably on the same day) appellant returned from the Mexican side, and came back to the ranch of Marulanda. He was arrested at this point on the same day by the constable. When found he had the wallet of clothing and shoes, which were identified as the clothing of deceased. He also had his old clothes, and was wearing the shoes he had worn at the ranch, which had tackheads protruding and turned-over heels. This was in the main all the testimony adduced against appellant.

In the light of this testimony, was the evidence of the absent witness material? Now, in regard to the testimony of the absent witness, Concepcion Garza, we would observe that it is proposed to prove by her that she knew the clothes proven by the State to be those of deceased to be appellant's clothes, because she had washed and mended them. It is not stated in the application where this witness lived. But assuming that she lived near the ranch of Garcia, and near the camp of appellant, where the homicide was committed, it would appear that she only had ten days within which to have washed and mended the clothing of appellant, for he had only been in that part of the country that length of time. The application, to have been a good one, should have stated when and where and under what circumstances she washed and mended that clothing. This it does not do. Moreover, it was very easy for appellant to have shown that the clothing produced in court had been mended and patched,

and had been washed recently. This was not attempted to be shown. Nor does this witness attempt to account for the brogan shoes found in possession of appellant, and which were shown to have been the property of deceased. It is remarkable, if appellant had clothes similar to those worn by deceased, that he was not able to make proof of this fact by some of the numerous witnesses who lived on that ranch. And it is singular, too, that the strange Mexican, who had on the evening before worn such a suit of clothes, should have been found dead the next day at the camp of appellant, only in his undershirt and drawers, his upper garments and his shoes gone, and also his wallet, and that appellant was found to be absent from camp—a thing that had not happened before—and to have been caught on the second day afterwards, some twenty-five or thirty miles distant, having in his possession clothing and shoes which answered the description of those belonging to the deceased, and which were identified by a number of witnesses as articles worn by him prior to the homicide. In the light of this testimony we are constrained to believe that, if the witness had been present and had sworn to the facts stated in the application, no honest jury could have regarded her testimony as probably true, and that it would not in the least have affected their verdict. We have examined the record carefully, and in our opinion it contains no error requiring a reversal of this case, and the judgment is accordingly affirmed.

*Affirmed.*

HURT, Presiding Judge, absent.

[NOTE.—Appellant's motion for a rehearing was overruled without a written opinion.—Reporter.]