# Owen v. Commonwealth.

(Decided June 21, 1918.)

## Appeal from Christian Circuit Court.

1. Criminal Law—Continuance—Affidavits.—Where an application for a continuance because of absence of witnesses is supported only by the affidavit of counsel, and not by any affidavit of the litigant, and the affidavit of counsel fails to disclose either the names of the witnesses, what they would testify, or whether they were within the jurisdiction of the court, the trial judge did not abuse a sound discretion in overruling the motion, especially since it did not appear that the applicant was deprived of the testimony of any material witness upon his trial.

2. Witnesses—Mental Capacity—Question for Court.—Whether a witness is mentally competent to testify is a question to be determined by the court, but the credibility of the testimony given by the witness is exclusively with the jury, and if the witness is found to be able to understand what he is saying and to possess sufficient mental capacity to clearly narrate facts observed by him, and to understand the obligations of an oath, the court would be authorized to admit his testimony to go to the jury.

3. Criminal Law—Instructions—Competency of Witnesses—Waiver.—While it is the duty of the trial court to instruct or admonish the jury, the purpose for which certain testimony is heard when it is directed to a collateral issue this rule does not apply so as to require the court to instruct the jury upon the competency of witnesses or the credibility of their testimony, and if the objection is to the competency of witnesses the question must be raised by an objection to the testimony, or by a motion to exclude it, and if neither is made, the objection will be considered waived.

4. Criminal Law—Instructions.—The rule in criminal practice requiring the court to instruct the jury upon the whole law of the case does not apply to, or reach the error of the admission of incompetent testimony.

JOHN C. DUFFY for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and Pete Sims were jointly indicted by the grand jury of Christian county for the offense of housebreaking, and upon their joint trial under pleas of not guilty the jury returned a verdict acquitting Pete Sims but convicting the appellant and fixing his punishment at confinement in the penitentiary for a term of two years. Complaining of alleged errors committed during the trial the appellant prosecutes this appeal.

The house alleged to have been broken into was an out building belonging to Lemond Armstrong, and from which was taken a sack containing fifty pounds of dynamite. The ground upon which Sims was acquitted was that he was an idiot and therefore not responsible for the act. The errors urged for a reversal are (1) error in not granting to appellant a continuance; (2) that the court should have peremptorily instructed the jury to find the appellant not guilty; (3) that the verdict is not sustained by the evidence, and (4) error committed by the court in the instructions given to the jury and in failing to give to the jury the whole law of the case. Considering these in the order named—(1) The indictment was returned on March 5, 1918, and the next day the defendants were brought into court and their trial set for March 22, 1918. On that day Mr. John C. Duffy, an attorney employed to represent appellant, made it known to the court that he had been recently employed and that no witnesses for the defendant had been subpoenaed and the case was set over until the next day, at which time still no witnesses had been subpoenaed, although a subpoena had been obtained for them the day before, and Mr. Duffy filed his affidavit in which, after stating his recent employment, he says:

"That on the morning of March 22, 1918, the day defendant's case was set for trial, he had subpoenas issued for said witnesses and placed same in the hands of the sheriff of Christian county, and that at the time said case was called for trial none of said witnesses had been subpoenaed; that the case was then set over for this day, and that he has never been able to see any of the defendant's witnesses, and had no chance or opportunity to prepare defendant's case for trial since his employment in said case, and that no preparation had been made for said trial by any one else."

It further appears that another attorney had been employed by the defendant before or about the time of the filing of the indictment, and no affidavit of any character was filed by defendant. It will be observed that in the affidavit of defendant's attorney the name of no witness is given, nor is any mention made of what any witness would testify or whether any of the witnesses resided within the jurisdiction of the court. Neither does it appear anywhere from the record that any material witness failed to testify upon the trial

It is a well known rule of practice in this jurisdiction, applicable alike to criminal and civil causes, that the trial court is vested with a reasonable discretion in the granting or refusing of continuances, and unless it appears from the record that such discretion was abused, the action of the court will not be disturbed on appeal. It is equally true that to authorize a court to grant a continuance because of the absence of witnesses, from whatever cause such absence may be produced, it is necessary for the applicant to make known to the court not only the names of the witnesses but the substance of their testimony and whether they are within the jurisdiction of the court so that their presence might be enforced. Unless such facts are made manifest to the court upon application there would be, to say the least of it, no abuse of discretion in overruling the motion. The further statement that the attorney making the affidavit was unwell and had not sufficient time after his employment to familiarize himself with the case we regard as without merit under the circumstances of this case, because, as seen, other counsel had been employed by defendant, and it does not appear that his rights suffered in the least on account of the fact relied on. It has been held many times by this court that it is not an abuse of discretion to refuse continuances because of temporary disqualifications of one attorney when there were others employed in the case, and to justify a continuance under such conditions the circumstances would have to be peculiar and clearly show that the defendant's rights would be prejudiced to refuse the continuance.

Since grounds (2) and (3) call for a consideration of the evidence, they will be considered together. The offense was committed one Saturday night, and the next day a bloodhound trailed a track from the house broken

into to the residence of Pete Sims. The officers there found five sticks of dynamite, and Sims then stated that the appellant Owen and himself broke the house and the former gave him five sticks of the dynamite and kept the remainder himself, which was contained in a tow sack. The officers then went to appellant's house, he being away at the time, and instituted a search which resulted in finding the remainder of the dynamite in the sack and deposited in appellant's crib. This was on Sunday night, and later appellant returned home and when inquiry was made of him as to where he got the dynamite he denied having any, according to several witnesses for the Commonwealth, but he says that he only denied having any stolen dynamite. Afterward he stated that on Saturday night he went to the house of Sims for the purpose of buying some chairs, but since the chairs had been sold he invested in the dynamite, giving to Sims five sticks of it. It was shown that Sims, while in jail, made the statement that he alone had committed the offense and that appellant had nothing to do with it, but Sims stated in his evidence that he was forced to make that statement because appellant threatened to kill him if he did not. It was shown in behalf of Sims that he was practically an idiot, inoffensive and harmless, but, according to the testimony of Dr. W. W. Durham, a physician of the asylum at Hopkinsville, in which Sims had been confined under a judgment in inquest proceedings, that the latter did not have mind enough to distinguish between right and wrong; nor, according to the opinion of the witness, was he morally responsible for his acts or capable of comprehending the import of an oath. From this evidence we are unable to agree with counsel that the proof furnished by the Commonwealth was insufficient to authorize a conviction, nor was such conviction based upon it flagrantly against the evidence.

It is a fundamental doctrine of the criminal law that possession of stolen goods makes at least a *prima facie* case of the guilt of the one in possession and casts the burden upon him to explain his possession consistent with his innocence. In this case the only explanation is that appellant purchased the goods from Sims. It is not for us to say whether that explanation is true or false, but it might appropriately be remarked that it is the same explanation which observation and experience

teaches us is a ready one in such cases. However this may be, it was a matter entirely with the jury and it cannot be said that its verdict was not justified.

Briefly considering the (4) ground for a reversal, the court gave to the jury two sets of instructions. One set submitted to the jury the guilt of the appellant and the other submitted the guilt of Sims. The instructions are identical, except that as to Sims there was an instruction authorizing the jury to acquit him if they believed that he was mentally incapacitated to commit the offense. No fault is found with the given instructions, but if there were we have been unable to discover any error in them. It is insisted that the court should have given to the jury, under its duty to instruct it upon the whole law of the case, an instruction to disregard the testimony of Sims in considering the appellant's guilt, because witness was shown by the testimony to be so mentally deficient as to render him an incompetent one, and in support of this contention we are referred to that line of cases making it the duty of the trial court, where evidence is heard upon a collateral issue, to instruct the jury either by way of admonition or otherwise the purpose for which such testimony is admitted. Among the cases so holding are Fueston v. Commonwealth, 91 Ky. 230; Gills v. Commonwealth, 18 Ky. Law Rep. 560; Jones v. Commonwealth, 20 Ky. Law Rep. 255, and many others that might be referred to. But, as we conceive it, counsel is laboring under a mistake as to the purport and applicability of that rule. It cannot be invoked so as to require the court to instruct the jury upon the competency of testimony or the credibility of it, but only to confine its application to the issue upon which it was introduced. If Sims was so mentally deficient as to render him incompetent as a witness, such incompetency is to be treated like any other incompetent testimony, and unless objected to by the one against whom it is introduced, it will be presumed to have been waived, or, if it was introduced without objection, no complaint because of it will be heard without a motion to exclude it from the consideration of the jury. Neither course was pursued here. Upon the trial of the case the Commonwealth did not introduce Sims. His testimony was put into the record when he testified in his own behalf, and after the Commonwealth had closed its testimony. Under the circumstances it was competent for Sims to testify in his own behalf, since it was

competent for the jury to see him and to observe his con-
versation as well as his conduct as bearing upon his plea
of mental incapacity.   Whether a witness is mentally
incompetent to testify is not a question for the jury but
one exclusively for the court upon the examination on
the *voir dire*. Chamberlayne's Modern Law of Evidence,
vol. 5, section 3657, 40 Cyc. 2200, 2201; City of Covington
v. O'Meara, 133 Ky. 762.   If the witness upon such ex-
amination is found to possess mental capacity sufficient
at the time his testimony is offered to understand what
he is saying and to correctly narrate facts observed by
him and to understand the obligations of an oath, it
would be the duty of the court to permit him to testify,
but it would be with the jury to determine the credibility
to be given to his testimony. Chamberlayne's Modern
Law of Evidence, *supra*, sections 3643, 3644 and 3645.   In
this case there was no *voir dire* examination, and the rec-
ord does not furnish us with any finding of the court as
to the competency of Sims, and without such a presenta-
tion we are without authority to determine the issue. If
these matters were fully presented by the record we could
not consider them, since the objection does not go to the
purpose for which the testimony was heard but only to
the competency of the witness, and it was not the duty of
the trial court to pass upon the competency of the wit-
ness without a request to do so by objections to the tes-
timony or in some other way, and the rule requiring that
the court shall instruct the jury upon the whole law of
the case is not applicable under the facts as here pre-
sented.

A review of the entire record does not convince us
that the substantial rights of the appellant have been
prejudiced, and the judgment is therefore affirmed.