## Tipton v. Commonwealth.

(Decided October 14, 1927.)

### Appeal from Estill Circuit Court.

1. Infants.—Under Ky. Stats., section 331e-2, concerning dependent, neglected, or delinquent children, county court, sitting as a juvenile court, has exclusive jurisdiction of all juvenile cases.
2. Infants.—Under Ky. Stats., section 331e-5, concerning dependent, neglected, and delinquent children, the circuit court can exercise jurisdiction over a juvenile delinquent only after the juvenile court has adjudged him to be such and transferred the case to the circuit court, so that the delinquent may be dealt with in a court having final jurisdiction of the offense charged.
3. Infants.—Ky. Stats., section 331e-4, providing that any reputable resident of a county may file with the clerk of the county court a petition setting out delinquency or dependency of child, held to have reference only to such neglected, dependent, or delinquent infants as are not charged with crime, in which case section 331e-5, concerning arrest of delinquent child, with or without warrant, is applicable.

4. Infants.—Filing of a petition under Ky. Stats., section 331e-4, by a reputable citizen of a county is a prerequisite to the county court's jurisdiction over neglected, delinquent, or dependent child, unless the child is arrested for a crime, in which case section 331e-5 is applicable.

5. Infants.—Under Ky. Stats., sections 331e-4, 331e-5, bringing a 16 year old boy charged with murder before the juvenile court on warrant, and, after his father and mother had been summoned and appeared and the boy had been adjudged a delinquent child, transferring the case to the circuit court, held proper procedure.

6. Infants.—Juvenile court held to have jurisdiction to transfer case of boy charged with murder to circuit court, notwithstanding clerical mistake in juvenile court judgment reciting that the defendant was 17 years of age.

7. Infants.—In prosecution against 16 year old boy for willful murder, circuit court order, directing the prosecuting attorneys to proceed in the juvenile court against the boy held a ruling that the circuit court had no jurisdiction to try defendant on the indictment, and for all practical purposes to be equivalent to a dismissal of the indictment, so that the juvenile court could take jurisdiction notwithstanding there had been no order entered in the circuit court dismissing the indictment.

8. Homicide.—In prosecution for willful murder, admitting in evidence witness' testimony that decedent, some time after quarrel, stated to him that "his head was killing him," if error, held harmless, since it was equivalent only to a statement that he was suffering from a wound in his head, and made clear from other evidence concerning the nature of the wound.

JOHN W. WALKER, BEN H. SCOTT and F. J. STEVENS for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

On the 6th of October, 1926, the grand jury of Estill county returned an indictment against Elmer Tipton, Ted Tipton, and Robert Tipton for willful murder, and on the 11th of October, 1926, upon the motion of the attorney for the commonwealth that indictment was quashed and the matter re-referred to the grand jury. On the same day the grand jury returned another indictment against the same parties for murder, and the defendant Elmer Tipton entered his motion to dismiss the indictment against him on the ground that he was, at the time of the death of decedent, under the age of 17 years.

A preliminary hearing was had on that motion, and, after the introduction of evidence, the court, being of opinion that it had no jurisdiction because defendant was at the time of the homicide under 17 years of age, directed the attorney for the commonwealth to proceed against him in the county court, but did not, so far as this transcript shows, enter an order dismissing this indictment. Then on the 13th day of October, 1926, the attorney for the commonwealth filed in court a judgment of the Estill county juvenile court reciting that the defendants Elmer and Robert Tipton had been brought in that court on a warrant charging them with willful murder, and that their father and mother had been duly summoned and appeared in court, and that, as it appeared that the two defendants named Robert and Elmer Tipton were under 17 years of age, it was ordered and adjudged that they be declared delinquent children, and that they be proceeded against in accordance with the law in this state governing the commission of the crime charged against them, and it was ordered that the cause be transferred to the circuit court, which order was signed by the county judge of Estill county.

Thereafter, and on the same day, a third indictment was returned in the circuit court against the three parties named, and upon his separate trial, held under the last-named indictment, appellant was found guilty of manslaughter and given a sentence of 10 years' imprisonment, and from that judgment this appeal is prosecuted.

The evidence on the trial disclosed a brawl between two drunken boys, and that during its progress decedent struck at appellant with an empty quart bottle, and that he either dropped the quart bottle or appellant took it from him, and then appellant struck decedent a hard blow on the back of the head behind the right ear, whereby the bottle was smashed and a considerable cut of two inches in length made upon decedent's head. They were then separated by appellant's father, whereupon decedent, still in a drunken condition, left the place of combat with his head bleeding profusely, and 4 or 5 days later his dead body was found some 2 or 2½ miles away in a more or less secluded place, and the evidence of a doctor who examined his body thereafter expressed the expert opinion that he died from external hemorrhage, in

other words, he bled to death. There is no material contradiction in the evidence as to the essential facts concerning the difficulty; appellant himself admitting on the stand that he struck deceased with a quart bottle.

It is insisted for appellant that the circuit court had no jurisdiction to try him (1) because he was not legally tried in the juvenile court; (2) because the case was not legally transferred to the circuit court from the juvenile court.

It is true that the county court sitting as a juvenile court, under the statute (Ky. Stats., section 331e-2), had exclusive jurisdiction of all juvenile cases coming before it; and under the act (Ky. Stats., section 331e-5), the circuit court can only exercise jurisdiction over a juvenile delinquent after the juvenile court has adjudged him to be such and transferred the case to the circuit court to the end that such delinquent may be dealt with in a court having final jurisdiction of the offense charged.

In section 331e-4 it is provided that any reputable resident of a county having knowledge of a child in the county, who appears to be either neglected, dependent or delinquent, and not the inmate of certain institutions designated in the statute, may file with the clerk of the county court a petition in writing setting forth the facts, verified by affidavit. That section then prescribes in detail the procedure to be followed upon the filing of such petition. Obviously that section has reference only to such neglected, dependent, or delinquent infants as are not charged with crime, but who are required to be brought before the county court in the method prescribed to the end that the court may take such steps and enter such orders for the benefit of such child as will relieve or alleviate its neglected condition, dependency, or delinquecy; and the filing of such a petition is a prerequiste of the county court's jurisdiction.

But subsection 5 of section 331e, in dealing with the arrest of a delinquent child, with or without a warrant, requires that such child shall be taken before the county court, and then provides in such cases:

"And in any case the court may proceed to hear and dispose of such case in the same manner as if the child had been brought before the court upon petition as herein provided."

Then in the same subsection it is further provided:

"The court may in its discretion in any case of a delinquent child brought before it as herein provided, permit such child to be proceeded against in accordance with laws that may be in force in this state governing the commission of crimes, and in such case the petition, if any, filed under this act shall be dismissed and the child shall be transferred to the court having jurisdiction of the offense."

In other words, subsection 4 deals with the situation which arises when the delinquent is brought before the court by petition as prescribed therein, and is not charged with a crime of which that court has no jurisdiction, and subsection 5 deals with the situation that arises when an infant delinquent is brought before the county court charged with a crime of which that court has no final jurisdiction. In this case appellant was brought before the county court on a warrant charging him with murder, and, after a hearing, as set forth in the judgment of the juvenile court, appellant was adjudged a delinquent, and the case transferred to the circuit court as prescribed by subsection 5. Clearly the procedure was just such as was contemplated by subsection 5, which confers the jurisdiction upon the county court under the conditions named.

The case of Cullins v. Williams, 156 Ky. 57, 160 S. W. 733, is not in point. In that case there was involved only the care, custody, and control of an alleged neglected child, and the court properly held that, in the absence of such a petition as is required by subsection 4, the county court had no jurisdiciton.

But it is said that the juvenile court judgment on its face shows that it had no jurisdiction to declare appellant a juvenile delinquent. It is true that the judgment of that court, entered on the 13th day of October, 1926, recites, as shown by the transcript, that appellant "is 17 years of age." It is perfectly obvious, however, that this recital is a clerical misprision brought about either in the entry of the original judgment, or a mistake in the judgment as copied in the transcript; for on the preliminary hearing before the circuit judge, held only a day or two theretofore, a full copy of the evidence being before us, it was unmistakably shown by appel-

lant's parents that he would not be 17 years of age until the 6th of December thereafter, and, as the crime involved was committed some months before the juvenile court proceeding, it was obviously an error either in the entry of the judgment or in the copying of the transcript. Even if appellant was 17 years old as recited, it only made the juvenile court procedure unnecessary, and put the original jurisdiction in the circuit court without action by the juvenile court.

It is also said that the juvenile court had no jurisdiction to enter the judgment it did because the circuit court had not entered an order dismissing the second indictment before the procedure in the juvenile court, It is true there is no order in the transcript showing the dismissal of the second indictment, but there is an order showing that the circuit court in effect held that that court had no jurisdiction, and directed the attorneys for the commonwealth to proceed in the county court under the terms of the Juvenile Act. For all practical purposes, this was a judgment of the circuit court to the effect that it had no jurisdiction until the juvenile court should have acted, and its practical effect was to hold that appellant could not be tried on the second indictment or any indictment in that court until the proper procedure was had in the juvenile court. For all practical purposes it was a dismissal of the second indictment, for the court unmistakably held it had no jurisdiction to try defendant on that indictment.

The procedure both in the circuit court and in the juvenile court conformed in all essential respects to the procedure prescribed in the statute.

Complaint is made that a witness who saw decedent some little time after the difficulty, and some distance from the place, was permitted to state that decedent then said "his head was mighty nigh killing him," which is equivalent only to a statement that he was suffering from the wound in his head. Conceding this to have been incompetent, it was merely the statement of a fact, made perfectly clear from the other evidence concerning the nature of his wound, and could not therefore have been prejudicial in any event.

The instructions submitted in accurate language the only issue in the case, and that was whether decedent died as a result of the wound inflicted by appellant on

him. The evidence designed to show that he might have died from drinking too much whisky, or from a stroke with a rock, was too vague and speculative to deserve serious consideration.

Judgment affirmed.