# Carsons v. Commonwealth.

(Decided December 15, 1931.)

2

DAVID SESSMER for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON— Affirming.

Frank Carsons and Tony Peterson, two young men, claiming Detroit as the place of their residence, left that place, "hitch-hiking," ostensibly to find employment.

They went to Chicago, where they remained one night, then to Hammond, Ind., to Indianapolis, Ind., and Louisville, Ky., where they spent one night in each city. On Monday morning, about 11 o'clock a. m., on the 23d day of February, 1931, they left Louisville, walking, going the Bardstown road. A Mr. Carrithers who was traveling on the highway in a Studebaker car, about 3 o'clock in the afternoon, permitted them to ride with him to Fern Creek, Jefferson county. On arriving there, they got out of his car, and within a few minutes tried to catch a ride on a truck, but missed it. They again started to walk, went a little way, when Mr. C. B. James and his wife came along in their car. The two boys waved to them; they stopped their car; the boys ran to it and asked for a ride, stating they had blistered their feet and were tired. They asked Mr. and Mrs. James how far they were going. They stated they were not going very far. The boys said they were going to Nashville, Tenn., and that a few miles ride would help them. Mrs. James opened the door for them and invited them to enter the car and to occupy the rear seat. The boys after seating themselves stated they were "footsore, tired and had no means."

From the point where they entered the car of Mr. James in Jefferson county to Cox's Creek in Nelson county, no conversation occurred between them and Mr. and Mrs. James. After the car reached just beyond Cox's Creek, Frank Carsons pulled a revolver out of his pocket and put it against the back of Mr. James. Mrs. James, on seeing him do so, said to him, "Is that the way to do us after we have given you a ride?" Carsons said in response, "Nobody is going to be hurt, we just want the car." He commanded James to slow down. James did so and the motor of his car "went dead." Just at that time an automobile came by from the direction of Bardstown going toward Louisville. To its occupants Mrs. James signaled with her handkerchief for them to stop. The car passed the James' car, stopped, and then backed up to it. At that time Mr. James got out of his car on the left side; Frank Carsons got out on the same side; Tony Peterson got out on the right side and went around the front of the car towards the driver's seat, and when he reached the front of the car, he stopped, where he remained standing. Mr. James addressing himself to Carsons said, "Buddy, don't pull anything

like that." Carsons was standing on the left side of him. Mr. James then walked diagonally across and to the side of the road, and stopped, facing the car. Carsons was standing in the road about the middle of the car. The two men who had backed their car up to the James car stopped it a little to the north of the James car, about twelve feet from it, when Carsons, with his pistol pointed at them, commanded them to "move on," which they did. When they were about 100 yards away they heard a pistol shot. While James and Carsons were occupying the positions we have described, Peterson got into James' car and started the engine. At the time he did so Mrs. James was seated beside him. Realizing that Carsons and Peterson were going to take the car, she got out of it on the right-hand side. As she got out of it, she looked through the car door, saw the expression on her husband's face "change," and heard the shot. She ran around the rear of the car to where Mr. James was lying in a ditch. He was dead when she reached him. She screamed for help, turned to look toward the car and it was gone; Carsons and Peterson were in it. They traveled the Louisville-Bardstown Highway, passing through Bardstown in the direction of Hodgenville. On their way they stopped at an oil station, called for gas, a young man waited on them, and when he had supplied them with gas, they directed him to charge it. He observed that they had a pistol in their possession and made no response. They continued to travel the highway until they reached Hodgenville. The officers residing at Hodgenville received telephone information of the shooting and the death of James and the direction in which Carsons and Peterson were traveling. They stationed themselves in the street, a short distance north of the courthouse. The street, on reaching the courthouse, divides and lies on both sides of the courthouse, turning both to the right and to the left, passing around it. On the approach of Carsons and Peterson, one of the officers raised his hand, when Carsons and Peterson "ducked." In their endeavor to pass around the courthouse the car ran against one corner of it, wrecking the car, throwing Carsons and Peterson out of it; one on the left and the other on the right, injuring both of them. They were arrested and two pistols were found, one on the running board, and the other on the floor of the car. The officers carried them to the offices of physicians for

first aid. Carsons, on being asked at the office of the physician why they killed the man, responded, "Is he dead?" They were then conveyed to the jail at Bardstown. The regular term of court was in session at the time, and on the next day the grand jury indicted them, charging them with the crime of willful murder, committed by the killing of C. B. James. The regular term being about to expire, and the court not having time to complete the business of the docket, extended it from February 28, 1931, to and including March 14, 1931. The trial of Carsons and Peterson was, by order of court, set for February 27, 1931, and they were remanded to jail. On account of its condition, on the 25th day of February, 1931, they were ordered to be confined in the county jail of Jefferson county until further orders of the court. On February 27, 1931, by an order of court they were returned to Nelson county for trial. On the calling of the prosecution for trial, the defendants presented, but subsequently withdrew, a motion for the regular judge of the court to vacate the bench. Thereupon the case was assigned for trial on the 9th day of March, 1931, and they were again remanded to jail in Jefferson county. On the 9th day of March they were returned by an order of court to the courthouse in Nelson county, and the prosecution was called for trial. The defendants entered a motion for a severance, which was sustained. Thereupon the commonwealth elected to try Frank Carsons. He entered a motion for a change of venue, supported by his own affidavit, and the affidavit of his attorney. The commonwealth offered evidence in resistance of his motion. On the evidence heard the court overruled his motion, to which he saved an exception. A motion for continuance was entered by Carsons, supported by his, Tony Peterson's, and his attorney's affidavits. The court overruled his motion to continue; to this ruling he saved an exception. A jury was summoned and impaneled, and a trial was entered into. After the jury heard the evidence, received the instructions of the court, and heard the arguments of counsel of both the commonwealth and the defendant, it failed to agree, and was discharged. The court again set the prosecution against Carsons for trial. By an agreement between the attorneys of the commonwealth and the attorney of the defendant, the same affidavits for a change of venue and for a continuance were agreed to be considered and were considered on this call of the case, as if they were then

filed for the purpose of a change of venue and a continuance. Both his motions for a change of venue and a continuance again were overruled, to which he excepted. A jury was impaneled and sworn, the evidence heard, the instructions given to it, arguments were made by counsel of the commonwealth and the defendant, and the jury on a consideration of the case returned a verdict, finding Carsons guilty of willful murder, and fixing his punishment at death. A judgment was accordingly entered from which he prosecutes this appeal.

In the recent case of Taylor v. Com., 240 Ky. 450, 42 S. W. (2d) 689, 692, the identical question of change of venue and like affidavits in support of the motion therefor were presented and disposed of by this court in this language:

"It is insisted that the court erred in refusing to grant a change of venue. An application for change of venue in a criminal prosecution must be made by the defendant by a petition in writing, verified by him, and supported by the affidavits of at least two other credible persons not related to nor of counsel of the defendant, stating that they are acquainted with the public mind in the county in which the prosecution is pending and that they verily believe the statements of the petition for such change of venue are true. See section 1110, Ky. Statutes; Graham v. Com., 164 Ky. 317, 175 S. W. 981. Without the presentation and the filing of such petition and the supporting affidavits indicated, the court is without authority to grant a change of venue. Miller v. Com., 175 Ky. 242, 194 S. W. 320."

In the Taylor case, as here, "no petition was filed as required by the statute," and the supporting affidavits did not undertake to comply with its requirements. On the authority of that case, it is apparent the trial court committed no error when overruling Carsons' motion for a change of venue. Waiving the question of his failure to comply with the statutes regulating and requiring the filing of a petition and supporting affidavits, and considering the motion as properly presented, the trial court on the evidence heard, properly overruled his motion for a change of venue.

In the affidavits of the appellee and his attorney setting forth grounds for continuance, the name of no wit-

ness is given by whom he expected to prove any fact, and no fact is stated in them which he believed he would be able to prove by any witness. The affidavits make no pretention toward complying, and do not undertake to comply, with the Code of Practice prescribing the duty of a defendant in a criminal prosecution when asking a continuance on the ground of absent witnesses. Section 189, Criminal Code of Practice; Rogers v. Com., 188 Ky. 817, 224 S. W. 348; Wimms v. Com., 206 Ky. 546, 267 S. W. 1101. In the affidavits filed in support of his motion to continue the prosecution, he claims that a continuance should have been granted until public sentiment and prejudice, which existed against him, subsided; that he had not had sufficient time to prepare for trial. It is argued here in support of this insistence that the constitutional right of an accused has been denied him by the trial court refusing to grant the continuance until he and his counsel to their own satisfaction has time in which to prepare in their own way his defense. It is true that the constitutional right of an accused to be represented by counsel necessarily carries with it the right of his counsel to have reasonable time and opportunity to prepare the case. McDaniel v. Com., 181 Ky. 766, 205 S. W. 915; Piercy v. Com., 195 Ky. 725, 244 S. W. 52. It is also true that it is of greater importance for justice to be certain and sure than to be too speedy, and the court, when giving an accused a trial, should be careful to avoid being rushed into hasty conclusions by popular clamour or public sentiment, but should give to each side a fair hearing. Fuson v. Com., 199 Ky. 804, 251 S. W. 995.

"It is not the purpose of the law to deprive any person of his life or liberty without giving him reasonable opportunity to establish his innocence, and the dignity and majesty of the law can be better vindicated by allowing this opportunity than by forcing the accused into a trial so soon after the commission of the offense with which he is charged as that he cannot in reason be prepared to answer with the care and preparation demanded by the nature of the charge against him." Allen v. Com., 168 Ky. 325, 182 S. W. 176, 180; Miller v. Com., 197 Ky. 703, 247 S. W. 956.

The record shows that Carsons was indicted on the 24th day of February, 1931, and the trial at which he was

convicted began on the 11th day of March, 1931, or that the 15 days elapsed from the date of the indictment to the date of the beginning of the trial. During all of that time it is shown by his affidavit and that of his attorney that his attorney was constantly, diligently, and faithfully giving all of his time to the preparation of his defense. After so engaging himself, their affidavits disclose neither the name nor the statement of a witness who would testify to any fact in his favor. The record of the trial of the case conclusively shows that all persons who were in a position to have any information concerning, or connected with, the shooting and the killing of James, were introduced as witnesses, either for the commonwealth or Carsons. One trial of the case occurred before the one in which he was convicted, and at which the facts presumably were developed. Considering the facts as they were shown at the trial at which he was convicted in connection with the fact that the name of no absent witness was divulged by his and his attorney's affidavit in support of his motion for a continuance, it is apparent that a continuance for the purpose of ascertaining the names of additional witnesses who might have knowledge of any fact material to his defense would have afforded appellant no material benefit or advantage. He does not now intimate that a delay or continuance would have enabled him to obtain other evidence or additional witnesses.

He complains of newspaper publicity dealing with the crime for which he was tried. Such publicity entitled him neither to a continuance nor to a change of venue. Mansfield v. Com., 163 Ky. 488, 174 S. W. 16; Clemens v. Com., 224 Ky. 370, 6 S. W. (2d) 483. Although the newspaper articles were competent evidence on motion for change of venue or for a continuance, but section 1110, Ky. Stats., and section 189, Criminal Code of Practice, must be first complied with by an accused. There must be evidence other than, and independent of, newspaper articles showing the condition of public sentiment in the county, and for that cause he cannot have a fair trial in the county in which the prosecution is pending, or at that term of court.

It appears from his affidavit and that of his attorney that the public sentiment and prejudice, if any, existing against him in the county, were created and existed by reason of his own wrongful act in the killing of the

deceased, and for which he was being tried. It is a fixed rule that where public sentiment or prejudice against an accused and existing at the time of the trial was created by his own wrongful act, the discretion of the trial court in refusing to continue for time in which such sentiment or prejudice may subside will not be reviewed by this court. Sexton v. Com., 6 Ky. Law Rep. 441; Smith v. Com., 42 S. W. 1138, 19 Ky. Law Rep. 1073; McNamara v. Com., 51 S. W. 786, 21 Law Rep. 539.

A ruling of the trial court on a motion for a continuance will not be disturbed unless an abuse of discretion appears. Dean v. Com., 78 S. W. 1112, 25 Ky. Law Rep. 1876; Johnson v. Com., 93 S. W. 581, 29 Ky. Law Rep. 442; Thurman v. Com., 142 Ky. 347, 134 S. W. 174; Kelly v. Com., 165 Ky. 483, 177 S. W. 249; Brennon v. Com., 169 Ky. 815, 185 S. W. 489; Owen v. Com., 181 Ky. 257, 204 S. W. 162; McGehee v. Com., 181 Ky. 422, 205 S. W. 577; Kirk v. Com., 192 Ky. 460, 233 S. W. 1060; Howard v. Com., 192 Ky. 687, 234 S. W. 299; Ellison v. Com., 195 Ky. 370, 242 S. W. 368; Piercy v. Com., supra; Graham v. Com., 200 Ky. 161, 252 S. W. 1012; Smith v. Com., 200 Ky. 335, 254 S. W. 910; Bolin v. Com., 206 Ky. 608, 268 S. W. 306; Mannin v. Com., 212 Ky. 529, 279 S .W. 945; McQueen v. Com., 224 Ky. 89, 5 S. W. (2d) 487; Browder v. Com., 232 Ky. 205, 22 S. W. (2d) 615.

The trial court is vested with a wide discretion in refusing a continuance which will not be disturbed on appeal unless the record affirmatively shows an abuse of such discretion. Begley v. Com., 200 Ky. 563, 255 S. W. 147; Fannin v. Com., 200 Ky. 635, 255 S. W. 514; Sullivan v. Com., 201 Ky. 390, 257 S. W. 13; Mullins v. Com., 227 Ky. 514, 13 S. W. (2d) 535. After a careful review of the motion and grounds for a continuance, we cannot say that the trial court abused a sound or reasonable discretion which is plainly vested in him in all criminal prosecutions.

The appellant, before the beginning of his trial, made known to the court and claimed it to be a fact that he was under 17 years of age at the time the crime charged against him was alleged in the indictment to have been committed. The law is very careful to protect in every reasonable way the rights of children who are put upon trial charged with a serious crime. It will not permit the circuit court to try a male person under 17

years of age without its jurisdiction first be conferred upon it by the jevenile court.

By section 331e-2, Ky. Stats., county courts have exclusive jurisdiction of a male child under 17 years of age arrested for, or charged with, crime. Waters v. Com., 171 Ky. 457, 188 S. W. 490; Talbott v. Com., 166 Ky. 659, 179, S. W. 621; Commonwealth v. Davis, 169 Ky. 681, 185 S. W. 73; Mattingly v. Com., 171 Ky. 222, 188 S. W. 370; Compton v. Com., 194 Ky. 429, 240 S. W. 36; Goodfriend v. Com., 216 Ky. 573, 288 S. W. 330; Tipton v. Com., 221 Ky. 363, 298 S. W. 990; Clark v. Com., 201 Ky. 262, 256 S. W. 398; Harman v. Com., 204 Ky. 186, 263 S. W. 733; Meade v. Com., 214 Ky. 88, 282 S. W. 781; Cloyd v. Com., 212 Ky. 178, 278 S. W. 595. While the circuit court is not authorized to try a male person under 17 years of age charged with crime without its jurisdiction is first conferred by proper orders of the juvenile court, on the return of an indictment charging one with crime and who claims that he was under 17 years of age at the time it is charged in the indictment the crime was committed, it is proper as well as the duty of the court to hear and to determine the question of his age without the intervention of a jury, it being a jurisdictional one. McQueen v. Com., 196 Ky. 227, 244 S. W. 681; Ashley v. Com., 236 Ky. 543, 33 S. W. (2d) 614; Angel v. Com., 231 Ky. 132, 21 S. W. (2d) 150.

The circuit court has jurisdiction to try a male person for a murder committed after his seventeenth birthday without an order of the juvenile court conferring jurisdiction on it. Wilson v. Com., 208 Ky. 707, 271 S. W. 1055. The appellant having claimed that he was under the age of 17 years when the crime was committed, the burden of proof rested upon him, since there is always a presumption in favor of jurisdiction in every case. Eldridge v. Com., 229 Ky. 499, 17 S. W. (2d) 403; Goodfriend v. Com., supra.

In the case of Cody v. Com., 210 Ky. 849, 276 S. W. 970, testimony was heard in behalf of the defendant in support of his claim that he was under 17 years of age at the time the offense was charged to have been committed, but no evidence was offered to the contrary. The trial court determined from his personal appearance that he was over the age of 17 and near the age of twenty. We held that this was improper. In the present case the appellant testified that he was under 17 years of age,

and there was evidence offered by the commonwealth to the contrary. Its sufficiency and weight were for the trial court, and we cannot say that his finding that appellant was over 17 years of age is not supported by, or contrary to, the evidence. Cloyd v. Com., supra; Eldridge v. Com., supra; Angel v. Com., supra.

The appellant entered a motion to require the commonwealth to elect whether it would prosecute him as a principal or as aider and abettor, and also demurred to the indictment. Section 126, Criminal Code of Practice, expressly provides that an indictment, except the offenses mentioned in section 127 thereof, neither of which is set out in the indictment herein, shall charge but one offense. It may charge that it was committed by different modes and different means, and it may allege the modes and means in the alternative. Anderson v. Com., 144 Ky. 215, 137 S. W. 1063; Brannon v. Com., 215 Ky. 589, 286 S. W. 785, 788.

This court in Brannon v. Com., supra, quoted with approval from Anderson v. Com., 144 Ky. 215, 137 S. W. 1063, the applicable rule in this language:

"It is well settled that an indictment may charge the commission of the offense in different modes and manners and in as many counts as the pleader desires to present it. Com. v. Hargis, 124 Ky. 356, 99 S. W. 348, 30 Ky. Law Rep. 510. It sometimes happens that the grand jury that finds an indictment does not know with certainty the manner or mode in which the offense for which the indictment is found was committed, but they have sufficient evidence to identify the person charged in the indictment with its commission. And so in such cases it is proper practice for the indictment to charge in separate counts different modes or manners in which the offense was committed. And, if upon the trial of the case the commonwealth can establish that the accused committed the offense in the manner and form described in any one of the counts that is sufficient, a conviction may be had. . . . When an indictment is thus drawn, presenting sufficiently in each count every aspect of the case in which, from the evidence before the grand jury, the crime might have been committed, the accused cannot say that the indictment did not furnish him information as to the mode or manner in which the offense was com-

mitted, and he may be convicted upon evidence show-
ing his guilt under any of the counts. . . . There-
fore the court did not err in overruling the demurrer
to the indictment.''

The basis of appellant's motion to elect, and also of
his demurrer, was that the indictment alleged more than
one offense, and for this reason not only his motion to
elect, but his demurrer should have been sustained. The
first paragraph of the indictment charged Carsons and
Peterson with the crime of willful murder; the second
charged Tony Peterson with the crime of willful murder
and Carsons with aiding and abetting in its commission,
and the third charged Frank Carsons with the crime of
willful murder and Tony Peterson with the crime of
aiding and abetting. Each paragraph sets forth the
essential and necessary facts to constitute the crime
charged. The indictment charged but one offense, i. e.,
willful murder, setting forth different modes by which
it was committed, which is permissible under section 126
of the Criminal Code of Practice and its construction as
given it by this court in the cases supra.

The instructions of the court properly defined the
words ''willful,'' ''willfully,'' ''feloniously'' and the
phrase, ''with malice aforethought.'' Garrett v. Com.,
215 Ky. 484, 285 S. W. 203; Ball v. Com., 125 Ky. 601, 101
S. W. 956, 31 Ky. Law Rep. 188; Burns v. Com., 136 Ky.
468, 124 S. W. 409. By instructions 2, 3, 4, and 5 the
court instructed the jury on willful murder, voluntary
manslaughter, reasonable doubt as to the degree of the
offense, and reasonable doubt on the whole case. The
instructions given have been approved often by this
court and in many cases. Speaks v. Com., 149 Ky. 393,
149 S. W. 850; Beaty v. Com., 140 Ky. 230, 130 S. W.
1107; Burns v. Com., 136 Ky. 468, 124 S. W. 409; Alder
v. Com., 215 Ky. 613, 286 S. W. 696.

The appellant insists that the court should have
instructed the jury defining involuntary manslaughter
and authorized it to find him guilty of this offense. It
was the duty of the court to instruct the jury on every
phase of the case covered by the indictment and author-
ized by the proven facts. It was admitted by Carsons
and Peterson in their testimony, in behalf of Carsons,
that they agreed between themselves that they would
take from its owner by force and violence, if necessary,
the first car in which they were permitted to ride. And

it is shown by their testimony that at the time the deceased stopped his car where the killing occurred Carsons, with a pistol in his hand, informed Mrs. James that it was the car they wanted. In other words, it was admitted by the appellant himself and his associate in crime that at the time and place of the killing of James and the taking of his car that they were acting in pursuance to a previous agreement between themselves to rob him of his car. Thus it is admitted by them that the killing was a part of a transaction in which they were engaged in the robbing of the deceased at the time he was killed by Carsons. Accepting their testimony in this respect, if Carsons killed James (and it is established beyond a reasonable doubt by the testimony in behalf of the commonwealth that he did), he was not only not entitled to an instruction on involuntary manslaughter, but he was not entitled to one on voluntary manslaughter. The court in giving it to the jury accorded to the appellant more than he was entitled. Powers v. Com., 197 Ky. 154, 246 S. W. 436, 440; Moynihan v. State, 70 Ind. 126, 36 Am. Rep. 178; State v. King, 24 Utah, 482, 68 P. 418, 91 Am. St. Rep. 808; Garza v. State, 39 Tex. Cr. R. 358, 46 S. W. 242, 73 Am. St. Rep. 927. The appellant, actuated by a predetermination to rob the deceased of his car, and while actually engaged in the act of robbing him, without any effort whatsoever on the part of the deceased to resist him, much less to inflict upon him any bodily injury, fiendishly shot and killed the deceased. No fact or circumstance was shown tending to authorize the giving to the jury an instruction on either voluntary or involuntary manslaughter. Commonwealth v. Saylor, 156 Ky. 249, 160 S. W. 1032; Miller v. Com., 163 Ky. 246, 173 S. W. 761; Curtis v. Com., 169 Ky. 727, 184 S. W. 1105; Cavanaugh v. Com., 172 Ky. 799, 190 S. W. 123; Haupe v. Com., 234 Ky. 27, 27 S. W. (2d) 394; Smiley v. Com., 235 Ky. 735, 32 S. W. (2d) 51; Caudill v. Com., 234 Ky. 142, 27 S. W. (2d) 705; Jones v. Com., 213 Ky. 356, 281 S. W. 164; Brown v. Com., 219 Ky. 406, 293 S. W. 975; Ewing v. Com., 129 Ky. 237, 111 S. W. 352, 33 Ky. Law Rep. 749.

The appellant and his companion, Tony Peterson, in their testimony agree in their statements with the witnesses for the commonwealth in every detail as to how the killing occurred up to the moment of the shooting. But to exonerate each other of the act of killing of James both of them testified that a shot was fired by

14

some one in the car which backed up near the car of James and then departed. The persons who occupied that car at the time of the killing were introduced by the commonwealth, and it is satisfactorily shown by their testimony that neither of them fired any shot on that occasion. They testified that neither of them possessed a deadly weapon with which they, or either of them, could have shot James. They were strangers to him, and no motive was shown for their shooting or killing him.

Mrs. James, at the moment the shot was fired, occupied her time in observing a ''strange'' and inexplicable expression on the face of Mr. James; for this reason her eyes were not directly on either Carsons or Peterson at the fatal moment. But she was able to state, and did state, that the shot was fired from about their own car and not by either of the men in the car that had stopped, backed up, and departed. The two men in that car had no interest in the trouble which was occurring between the young men and the Jameses. The reason for this car stopping and backing up was a signal to its occupants by Mrs. James, and their hurried departure was made at the command of Carsons to ''go on,'' at which time he pointed his pistol toward them. There is not the slightest doubt as to who killed James, nor of the motive which actuated the mind in the killing of him.

The appellant complains that the courtroom was overcrowded by spectators at the time of his trial. The law requires that an accused shall be given a public trial, but it makes no provision as to the number that shall or shall not attend the trial. It is not intimated, except in brief of counsel, that the presence of the crowd either directly or indirectly, remotely or otherwise, controlled or influenced the verdict of the jury. No complaint is found in the bill of exceptions of the presence and conduct or actions of any spectator. In the absence of complaint thereof in the bill of exceptions, this court is precluded from considering it. Moore v. Com., 223 Ky. 128, 3 S. W. (2d) 190.

This case and the facts in it are so similar to those in the case of Powers v. Com., supra, that we deem it not inappropriate to use the language of this court, quoted in that case, from Lawler v. Com., 182 Ky. 185, 206 S. W. 306. The appellant ''has been shown to be guilty of a most atrocious murder, prompted by no other motive

than robbery. The Legislature, in providing for the death penalty for the crime of murder, realized that there were cases of sufficient magnitude to deserve the punishment of death. If there be such, this case comes within that class. We must administer the law as we find it, and if one constructs for himself a bed of thorns, he has no one to censure but himself. We think there can be no doubt of defendant's guilt, and being the sole author of his condition, he must suffer the consequences, since we cannot find anything in the record to authorize our interference.''

Upon the whole case after a careful and painstaking consideration of the record, we find nothing indicating any injustice has been done the appellant, or an unfair consideration of his rights, or his defense, either by the jury, the prosecuting officers, or the court.

The judgment is therefore affirmed.

Whole court sitting.